WILLIAM A. CHAPMAN et al., Plaintiffs-Appellees, v. THE COUNTY OF WILL, Defendant-Appellant—(LATONA C. KLECKA et al., Intervening Defendants-Appellants.)

(No. 71-223; ■■■■■■■■

Third District—December 28, 1972.

*Rehearing denied January 24, 1973.*

1008

STOUDER, P. J., dissenting.

Louis R. Bertani, State's Attorney, of Joliet, for appellant County of Will.

Albert Krusemark, Jr., of Joliet, for intervening appellants Latona C. Klecka *et al.*

Thomas R. Wilson, of Joliet, for appellees.

Mr. JUSTICE ALLOY delivered the opinion of the court:

This is an appeal from a judgment of the Circuit Court of Will County in an action instituted for declaratory judgment and in which summary judgment was entered by the Circuit Court of Will County as hereinafter indicated. The declaratory judgment action was instituted by the plaintiffs as owners of two adjoining parcels of real estate located within Will County, Illinois. The issue before the court on appeal revolves about the protest provisions contained in Section 5 of the Counties Zoning Act (Ill. Rev. Stat. 1969, ch. 34, par. 3158), which contains the following language:

> "In case of written protest against any proposed amendment, signed and acknowledged by the owners of twenty percent of the frontage proposed to be altered, or by the owners of twenty percent of the frontage immediately adjoining or across an alley therefrom, or by the owners of twenty percent of the frontage directly opposite the frontage proposed to be altered, * * * filed with the county clerk, such amendment shall not be passed except by the favorable vote of three-fourths of all the members of the county board."

Plaintiffs in this action are the owners of tracts of land consisting of one tract of approximately 153 acres and another of approximately two acres. The 153 acre tract on the date in question, September 30, 1970, had a zoning classification of District "F" (Farming and Agriculture) under the Will County Zoning Ordinance. Plaintiffs sought to rezone the tracts to a classification which would permit use as a trailer camp and to rezone one and eight-tenths acres thereof to a classification permitting use for trailer sales. After public hearings had been held, the Zoning Board of Appeals recommended to the County Board of Supervisors that both rezonings, or amendments requested, be denied. Before the matter had been considered by the Board, written protests had been filed by several persons purporting to be owners of frontage directly opposite and across the street from plaintiffs' tract and by Latona C. Klecka and by an owner named Most, owners of land immediately adjoining plaintiffs' tract. When the County Board of Supervisors met to consider the matter, the proposal to rezone the larger tract received a vote of 26 in favor and 13 against, while the proposal to rezone the smaller tract received a vote of 27 in favor and 12 against. The chairman of the Board, however, ruled that a favorable vote of three-fourths of all the members of the Board was required and, therefore, that neither amendment had passed.

Thereafter, plaintiffs filed a suit against Will County in the circuit court of Will County, seeking a declaratory judgment that only a simple

majority vote was needed and that the amendments had, therefore, passed. The written protesters were later granted leave to intervene in this action as parties-defendant. It was the theory of the complaint of plaintiffs that a provision of the Will County Zoning Ordinance which required a three-fourths vote in instances where the Zoning Board of Appeals recommended against the zoning amendment was invalid. This contention was proper and consistent with the determination in *Traders Development Corp. v. Zoning Board of Appeals*, 20 Ill.App.2d 383, 156 N.E.2d 274. Plaintiffs also contended that the protests filed were insufficient to invoke the three-fourths majority vote required by Section 5 of the County Zoning Act of the State of Illinois hereinabove referred to. The trial court entered summary judgment for plaintiffs granting the relief prayed and both the County of Will and the intervening defendants have appealed to this court.

On the basis of our determination of the issues in this cause, we need consider only the question of whether the trial court correctly ruled that the Klecka and Most protests were insufficient to invoke the three-fourths vote requirement of Section 5 of the Counties Zoning Act hereinabove referred to. This necessarily requires construction of the legislative language which provides that a valid and sufficient protest may be made "by the owners of twenty percent of the frontage immediately adjoining" the frontage sought to be altered. So far as we have been able to determine, the specific issue as to land "immediately adjoining" has not been decided in the courts of this State.

The record indicates that plaintiffs' 153 acre tract has a frontage of 2640 feet on Cottage Grove Avenue which runs north and south and extends back from Cottage Grove Avenue to a depth of 2440 feet along its northern boundary and approximately 2190 feet along its southern boundary. Its rear, or eastern, boundary is irregular but covers a width of 2590 feet. To the north, plaintiffs' tract is adjoined for a distance of 1220 feet by a tract which has a frontage of 1220 feet on the avenue. (The owner of this tract apparently filed no protest.) Plaintiffs' tract also extends for an additional 1220 feet along what is the rear, or southern, boundary of a tract of about 100 acres owned by the protester named Most. The Most tract has no frontage on Cottage Grove Avenue but fronts on Burille Road, an east-west road which intersects with Cottage Grove Avenue about 2640 feet north of plaintiffs' tract. On the south, plaintiffs' tract is adjoined by the 39 acre Klecka tract for a distance of 2190 feet along the east-west boundary between the two tracts. The Klecka tract, irregular in shape along its southern boundary, has a frontage of 330 feet on Cottage Grove Avenue and extends back to a depth of 2690 feet along its north and south boundaries. It has a rear eastern

boundary line of 825 feet. We note, for reasons which will later be shown, that the small tract plaintiffs seek to rezone for trailer sales is a 200 by 400 foot rectangle situated in the northeast corner of the 153 acre tract and has a frontage of 400 feet on Cottage Grove Avenue. This tract is thus adjoined on the south and east by plaintiffs' own land and on the north by the tract of the owner who filed no protest.

With respect to the proposed rezoning of the larger tract, plaintiffs rely principally on *Village of Bannockburn v. Lake County*, 17 Ill.2d 155. The Supreme Court in that case, when called upon to construe that part of the language of Section 5 of the Counties Zoning Act which provides for a protest "by the owners of twenty percent of the frontage directly opposite the frontage proposed to be altered," stated as follows: (at page 159)

> "The word 'frontage' has a common, ordinary meaning and, obviously, that meaning was intended in the statute here under construction. 'Frontage' means that part of the parcel sought to be rezoned that gives access frontage on a roadway, alley or other public way. Property that is adjacent and contiguous to a stream, highway or road may be said to have frontage thereon. There is no indication to be found in the statute that any meaning other than the usual and customary meaning of the word was intended. We, thus, must use the definition above set forth, which is certainly commonly accepted."

■■ Plaintiffs contend that the same meaning must be given to the word "frontage" in this case, and assert that since the protesting owners of adjoining property, Klecka and Most, have only a frontage of 330 feet on Cottage Grove Avenue, a figure considerably less than twenty percent of the frontage proposed to be altered, their protests were insufficient to invoke the requirement that the rezoning had to pass by a three-fourths vote. While this contention may have a superficial appeal, we do not agree that the legislature intended the word "frontage" to be construed or circumscribed so narrowly when it referred to twenty percent of the "frontage immediately adjoining" the property to be rezoned. As pointed out in *Standard Oil Co. v. Kamradt*, 319 Ill. 51, the word "frontage" is not to be inflexibly construed in all instances, and in our opinion both the language of Section 5 itself and the application of basic principles of statutory construction dictate a conclusion that the adjoining boundaries of the Klecka and Most tracts were "frontage" within the legislative meaning and intent. Construed in such fashion, the Klecka protest in itself was sufficient to require the three-fourths vote.

■■ "Frontage" is defined in *Village of Bannockburn v. Lake County*, 17 Ill.2d 155, "means that part of the parcel sought to be rezoned

that gives access frontage on a roadway, alley or other public way." (Emphasis added.) Thus, if any alley intervened between the north boundary of the Klecka tract and the south boundary of plaintiffs' tract, it is obvious the foregoing definition of the boundary of the Klecka tract would be "frontage" within the language of Section 5 which refers to the owners of "frontage * * * across an alley therefrom." Statutes must be reasonably construed to the end that they will be applied in a practical and commonplace manner and that absurd consequences will be avoided. (*Illinois National Bank v. Chegin*, 35 Ill.2d 375; *Goldblatt v. City of Chicago*, 30 Ill.App.2d 211.) An absurd result would necessarily be produced if we were to say that the legislature intended to distinguish between owners of property immediately adjoining and owners of property across an alley, or that the legislature intended that the owners "across an alley" should have a more effective means of protest than the owners of property "immediately adjoining." We believe it is, therefore, apparent and necessarily follows that the words "frontage immediately adjoining or across an alley therefrom" require a construction that the legislature had reference to frontage created by adjoining property lines or by the parallel lines separated by an alley.

■■■ By another rule of statutory construction the intention of the legislature is to be gathered not only from the language used but also from the reasons for the enactment and the purposes to be attained thereby. (*People ex rel. Cason v. Ring*, 41 Ill.2d 305; *Tidwell v. Smith*, 57 Ill.App.2d 271.) Where we apply such rule of construction here, it further fortifies the conclusion which we have expressed. A statute or ordinance permitting "frontage protest" differs from a statute or ordinance requiring "frontage consents," but each have an obvious purpose of according to an owner a means of protecting his property against depreciation in value and exposure to danger and noxious enterprises which could result from a change of use in nearby or adjoining properties. (See: *Jennings v. Calumet National Bank*, 348 Ill. 108; *Standard Oil Co. v. Kamradt*, 319 Ill. 51.) Such purpose we conclude is implicit in the provisions of Section 5 which called for more stringent requirements for rezoning when written protests are filed by owners of frontage in the area to be rezoned, by owners of frontage immediately adjoining, or by owners of property directly opposite the frontage proposed to be altered. Of the three classes of owners sought to be given some measure of self-protection, it would appear that it is the adjoining property owners who would be the most affected by a zoning change.

■■ In the case before us, the Klecka tract adjoins plaintiffs' tract for a distance of 2190 feet, but has a frontage of only 330 feet on Cottage Grove Avenue. While the Most tract adjoins plaintiff's tract for a distance

of 1220 feet, it has no frontage whatsoever on Cottage Grove Avenue. Accordingly, if we were to say that the word "frontage" in the phrase "frontage immediately adjoining" has reference only to frontage on the same street upon which the property proposed to be altered has its street frontage, it would clearly defeat the purpose of Section 5 and deny to adjoining owners the protection intended. In our judgment this is an absurd, unreasonable and unjust construction of the phrase of said Section 5 which is at issue in this cause. We conclude that it could not have been intended by the legislature. Where the language of the statute admits of two constructions, one of which would make the enactment absurd, if not mischievous, while the other renders it reasonable and wholesome, the construction which leads to an absurd result will be avoided. (*People ex rel. Barrett v. Thillens*, 400 Ill. 224.) As we construe the Act, the unjust and absurd result could only be avoided by a construction that, as applied to adjoining owners, has reference to the frontage line marking the border where the properties adjoin. We conclude, therefore, that the contiguous boundary, or frontage, of the Klecka tract was sufficient to invoke the three-fourths vote requirement with respect to rezoning of the tracts sought to be rezoned for use as a trailer camp.

As an illustration of the absurdity of a construction which would deprive adjoining owners of an effective protest, we can consider a theoretical illustration of an owner who has a 1000 foot square piece of property having linear dimensions of 1000 feet facing a street. If the narrow construction were adopted, the owners of the 3000 feet (without 200 foot street frontage) adjoining the tract would not be able to file a protest which would require a three-fourths vote. If, in the same tract, an alley were to run from the street along one side of the tract a distance of 50 feet only, the owner of a small ten foot tract across this alley from the property could effectively protest and require a three-fourths vote. This would illustrate the inconsistency of the construction which would give no effect to protests filed by owners of extensive immediately adjoining property. Section 5 does not say, in referring to property "immediately adjoining" that "street frontage" or "alley frontage" would be the standard by which the effectiveness of the protest is to be measured. The language which is used specifically refers to property "immediately adjoining." The obvious legislative intent was to give abutting owners an effective voice in controlling amendments which would rezone adjoining property and, also, to give owners of property across a street or alley a similar effective right of protest.

■■ An alternative contention by plaintiffs is that a simple majority was all that was needed to rezone the small tract proposed to be used for

trailer sales, due to the circumstance that none of the protesters' land either adjoined it, or was directly opposite it across Cottage Grove Avenue. Until this smaller tract would be rezoned, however, it is and would continue to be a part of a large tract which is adjoined by the Klecka and Most properties. For reasons already stated, the protest of the owners of the Klecka and Most properties would be sufficient to require a three-fourths vote for rezoning of the smaller tract as part of the larger tract. Any other construction would produce an unjust and absurd result and would put persons seeking rezoning in position to completely thwart the will of the legislature as expressed in Section 5. In this case, for example, if we were to hold that a piecemeal rezoning of a larger tract voids the protest of adjoining owners, plaintiffs or other property owners similarly situated could evade Section 5 by the simple device of not seeking to rezone a buffer strip between the portion of their property sought to be rezoned and that of adjoining owners. The courts must presume that the legislature intended to enact an effective law and must accordingly avoid a construction which would make the statute ineffective in operation. *Linkens v. Furman,* 52 Ill.App.2d 1.

For the reasons expressed in this opinion, we conclude that both of the proposed zoning amendments failed to pass by the requisite vote. The judgment of the Circuit Court of Will County is accordingly reversed.

Judgment reversed.

DIXON, J., concurs.

Mr. PRESIDING JUSTICE STOUDER dissenting:

I do not agree with the majority of the court in so far as the court concludes the protester met the statutory qualifications. I concur in that part of the opinion which holds invalid the county ordinance requiring a three-fourths majority of the County Board if the Board of Zoning Appeals recommends against the modification or amendment of the zoning. I also agree that for the purpose of determining the status of owners of immediately adjoining frontage, the smaller tract should be considered part of the larger tract.

I am in agreement with the majority that the purpose of the statute and ordinance enacted pursuant thereto is to provide some means for those property owners specially affected by alterations in zoning to have a more significant voice in the rezoning process than those not so specially affected. As is true in most zoning cases and particularly in rezoning cases, some existing landowners may feel that their property will depreciate in value or decrease in desirability if uses of other property in the area are changed. Likewise the owner of property seeking

an altered use of his property may well believe that the pre-existing use depreciates the value of his property and that he is entitled to the enhancement in value that might occur from a change in zoning classification. It is a balance between these competing viewpoints which zoning and rezoning seek to achieve. Not only does the ordinance establish special protections for landowners whose interest may be more substantially affected than others but it also establishes limitations as to the class of landowners entitled to the special protection.

Thus so far as the purpose of the legislation is concerned and the county ordinance enacted pursuant to it, it can be said that the legislature has established standards or criteria for determining the class of landowners specially affected by alterations in the zoning and therefore entitled to the special protection. This does not necessarily mean that other landowners may not be affected by rezoning but does mean that other landowners, even if affected by the alteration, are not entitled to the special protections provided.

I agree that determining legislative intent may be affected by the rule discussed by the majority but to me they do not justify or support the reasoning or result suggested thereby. In determining the meaning of the statute I would add two additional rules which I believe offer additional support to my belief that a contrary result is required. First, where language in a statute is repeated it is presumed to have the same meaning whenever used unless a different meaning is obviously intended or required. Second, the language of a statute will be given its ordinary common sense meaning particularly where a different meaning could have been readily conveyed by different language.

*Standard Oil Co. of Indiana v. Kamradt*, 319 Ill. 51, 149 N.E. 538, and *Village of Bannockburn v. Lake County*, 17 Ill.2d 155, 160 N.E.2d 733, are the principal cases governing the resolution of the issues of this case even though as pointed out in the majority opinion they do not involve the class of persons owning adjoining frontage.

"The term 'frontage' unless a special meaning must be given it by reason of language in the particular ordinance, may be defined as the line of demarcation between private property and that open to the general use of the public, such as a street, stream, or park." The *Kamradt* case interpreted a county ordinance which required that before gasoline storage tanks could be installed consents of the majority of the owners of frontage within a certain distance from the lot upon which the tanks were to be installed had to be secured. The specific holding in *Kamradt* was that a corner lot had frontage on both intersecting streets rather than only one, court relied primarily on cases involving special assessment for street improvements and rejected the view that the corner lot

had frontage only on the street which adjacent lots faced. The opinion emphasizes that frontage relates to the lot dimensions abutting streets whether the same be considered front, back or side and there is no intimation interior boundary lines may be considered frontage.

*Village of Bannockburn v. Lake County*, 17 Ill.2d 155, 160 N.E.2d 773, adopts the definition of frontage from the *Kamradt* case and holds where the property sought to be altered had frontage on Deerfield Road, owners of property on the opposite side of the road were proper protesters. The court in *Bannockburn* observed, "This description of the the parcel and the measurements above quoted are not in dispute as between the parties but their difficulty is concerned with a definition of the word 'frontage', it being the contention of the defendants that 'frontage', as used in the statute, requires protest to be signed by owners of property that in the aggregate own at least twenty percent of the entire perimeter of the property proposed to be altered." Without much discussion the court held that frontage had a well established common usage and could only refer to the dimension of the property abutting Deerfield Road.

The *Bannockburn* case establishes the meaning of frontage under that provision of the statute relating to protests by owners of property opposite therefrom, and, I find no language in the statute from which it may be reasonably inferred that the term was intended to have a different meaning when applied to other classes of protesters nor do I believe there is anything in the Section relating to the owners of immediately adjoining frontage which suggests that the term has a meaning different from its usual and customary meaning. If frontage is the linear dimension of the property abutting the street or highway then immediately adjoining frontage is the extension of such dimension along the same street or highway as the frontage dimension of adjacent property. There is no question but that the subject property had a frontage dimension on Cottage Grove Avenue of 2640 feet, that the adjacent tract of property to the north had frontage immediately adjoining that of the subject property of 1220 feet and that to the south the tract belonging to the protester had immediately adjoining frontage of 330 feet. If the owner of the property to the north had protested he would have been within the terms of the statute since the amount of his frontage exceeded twenty percent of the frontage of the tract proposed to be altered. However the frontage of the tract to the south owned by the protester Klecka being only 330 feet is not twenty percent of the frontage of the tract to be altered. If the owner of the property adjacent to the Klecka tract on the south had for example the same frontage on Cottage Grove Avenue as Klecka and had joined with Klecka then the combined

total of immediately adjoining frontage would have exceeded 600 feet and would have been more than twenty percent of the frontage to be altered and the three-fourths vote would have been properly invoked.

There is some intimation in the briefs of the parties that since there can be at most one adjacent or adjoining parcel having frontage on the same common road or highway on each side of the property to be re-zoned then if one of such owners protests he has satisfied the requirement because he owns fifty percent of the immediately adjoining frontage. This appears to me to be an improper interpretation of the statute for several reasons. First of all since the adjoining property owner would in every case own at least fifty percent of the adjacent frontage then the requirement of twenty percent would be meaningless. Secondly, this would permit the adjacent property owner to qualify as a protester regardless of the amount of his frontage which could be insignificantly small compared with the frontage of the property to be rezoned. Third, the statute expresses the intention that there should be some substantial minimum frontage in comparison with the frontage proposed to be altered before the special protection provision should be operative. Fourth, if the legislature had intended to afford the special protection to either of the adjacent property owners it could have easily done so by language other than that employed.

In concluding that immediately adjoining frontage refers to the common boundaries between the tract proposed to be altered and the land surrounding it, it is my conclusion that the majority has adopted a meaning for the term "frontage" not justified by the statute, supported by definition or approved by any authorities. The conclusion of the majority proceeds in some measure from what I believe to be an unwarranted construction of a phrase in the statute. The statutory language is "* * * by the owners of twenty percent of the frontage immediately adjoining or across an alley therefrom, * * *". (Sec. 5 of the Counties Zoning Act, Ill. Rev. Stat. 1969, ch. 34, par. 3158.) To me the phrase "or across an alley therefrom" merely means that if adjoining property is separated from the property to be altered by an alley or adjoining tracts are separated from one another by an alley, the intervention of the alley will not prevent the frontage along the street or highway from being considered immediately adjoining frontage. The reference to the alley permits the frontage to be interrupted by an alley and permits the owners of property on the other side thereof to qualify as protesters under this Section which would not otherwise be the case or would be the case if a street intervened. The inclusion of the phrase does not refer to frontage along the alley since such a meaning would make the Section inapplicable because it would then be governed by that Section

referring to property owners opposite the frontage to be altered. Furthermore the provision is equally applicable whether the alley form a boundary of the property to be rezoned or whether it be located at some distance from the subject property, has no connection with the subject property and be bounded entirely by property owned by others. Thus I believe the meaning of the phrase "across an alley therefrom" is strained and offers no support for the majority's further conclusion that as a consequence thereof common boundaries are referred to by the term frontage.

In conclusion it seems to me that the legislature has expressed its intention in clear language that frontage in its commonly accepted sense is the criteria upon which depends the determination of whether owners have a sufficient interest affected by the proposed rezoning. If the legislature had intended that the interest to be protected depended on area, common boundary lines, interior lot lines, perimeters or distance, it could have done so. By establishing a required relative interest of twenty percent of the immediately adjoining frontage rather than fifteen percent or five percent the legislature has determined not only that frontage is an appropriate standard but that the interest to be protected must be substantial. Even though the Klecka tract may be significantly affected by the rezoning this does not mean that the intention of the statute either in spirit or letter has been thwarted if Klecka be deemed to have an insufficient amount of adjoining frontage.