(No. 45709.

WILLIAM A. CHAPMAN *et al.*, Appellants, v. THE COUNTY OF WILL *et al.*, Appellees.

*Opinion filed November 20, 1973.*

HERSCHBACH, TRACY, JOHNSON & WILSON, of Joliet (THOMAS R. WILSON and WAYNE R. JOHNSON, of counsel), for appellants.

KRUSEMARK and BERTANI, of Joliet (ALBERT H. KRUSEMARK, JR., of counsel), for appellee The County of Will.

MARTIN RUDMAN, State's Attorney, of Joliet (LUDWIG J. KUHAR, Assistant State's Attorney, of counsel), for other appellees.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Plaintiffs, South Holland Trust and Savings Bank, as trustee of certain real estate, and William and Herman

Chapman, as sole owners of the beneficial interest of the trust, filed a declaratory judgment action in the circuit court of Will County seeking to set aside a decision of the Will County board of supervisors which denied a change in zoning classification. While the reclassification was approved by a majority of the board members, it failed to gain a three-fourths approval as would be required by section 5 of the County Zoning Act, if applicable (Ill. Rev. Stat. 1971, ch. 34, par. 3158), and it was therefore denied. The circuit court granted summary judgment for plaintiffs, holding that the zoning amendment should have been ordered properly adopted because it required only a majority vote for confirmation. Several counts in which plaintiffs raised other contentions were dismissed on the court's own motion without prejudice and with leave to reinstate. The appellate court reversed, one justice dissenting (*Chapman v. County of Will, 8 Ill. App. 3d 1007*), and we granted leave to appeal. The fundamental issue presented is whether plaintiffs' zoning request required the extraordinary three-fourths majority approval.

In pertinent part section 5 of the County Zoning Act reads as follows:

> "*** In case of written protest against any proposed amendment, signed and acknowledged by the owners of twenty percent of the frontage proposed to be altered, or by the owners of twenty percent of the frontage immediately adjoining or across an alley therefrom, or by the owners of twenty percent of the frontage directly opposite the frontage proposed to be altered *** such amendment shall not be passed except by the favorable vote of three-fourths of all the members of the County Board."

For purposes of this appeal we need only consider two categories of those who are statutorily empowered by section 5 to protest rezoning. These are the "owners of twenty percent of the frontage immediately adjoining or across an alley therefrom" and "owners of twenty percent of the frontage directly opposite the frontage proposed to be altered."

Plaintiffs' property comprises about 155 acres and was zoned for agricultural use. They sought to change the classification to permit the vast part of their land to be used for a trailer park. A smaller section consisting of approximately 2 acres, which was located in the northwestern corner of the property, was to be used for the display and sale of mobile homes. After examination of this property's description contained in the parties' briefs filed herein, and the appellate court opinion, we find the following description is sufficient for determination of the issues presented. The western boundary of plaintiffs' property is located on Cottage Grove Avenue and extends for a distance of 2640 feet. The northern border is 2440 feet. The eastern and southern boundaries are irregularly shaped but are the same total length as the boundaries directly opposite.

During the course of the administrative proceedings prior to institution of this action various written protests were filed seeking to prevent rezoning of the property. The first group of protestors own land adjoining plaintiffs' property. They sought to bring themselves within the provision of the statute which requires three-fourths approval of County Board members if there are protests "by the owners of twenty percent of the frontage immediately adjoining or across an alley therefrom." The Klecka tract is located at plaintiffs' southern boundary. Its western border is contiguous with Cottage Grove Avenue for a distance of 330 feet. Its northern boundary is coterminous with plaintiffs' land for a distance of 2190 feet. The Most tract is located to the northeast of plaintiffs' property and borders it for 1220 feet in length. However, there is no direct access to Cottage Grove Avenue from this land. The remainder of plaintiffs' northern boundary (1220 feet) adjoins a tract of land which borders Cottage Grove Avenue for a distance of approximately 1320 feet. No protest was advanced by any owner of this property.

The second group of protestors consisted of purported

"owners" of five separate parcels of land located directly across Cottage Grove Avenue from plaintiffs' property. It is undisputed that this property consists of "frontage directly opposite the frontage proposed to be altered" within the meaning of section 5 and that their combined frontage barely exceeds the twenty-percent requirement of section 5. Plaintiffs contested the validity of several of these protests, claiming that they were not filed by those who were "owners" within the meaning of section 5 and that one other protest was insufficient for it was signed by only one joint owner. Should any of these protests be disallowed then the requisite twenty percent within this class would not be established.

The appellate court deemed it unnecessary to reach the issues relative to the latter category of protestors for it held that the Klecka objection was sufficient to require a three-fourths approval for adoption of the zoning amendment for land to be used as a trailer camp. Similarly, the Klecka-Most protests prevented the smaller tract from being rezoned.

The majority of the appellate court predicated its decision upon its interpretation of the legislative intent expressed in section 5, which it construed as affording an opportunity to contest zoning changes to owners of abutting property as well as those who own land across an alley or street from the property to be altered. It said that to adopt the position that the term "frontage" referred only to "street frontage" would defeat the legislative intent to protect adjoining property owners. Therefore the majority construed the phrase "frontage immediately adjoining or across an alley therefrom" to mean "frontage created by adjoining property lines or by the parallel lines separated by an alley." 8 Ill. App. 3d at 1012.

The appellate court's determination that the term "frontage," as applied to the present cause, means any contiguous boundaries is incorrect. To accept such an interpretation would permit an objection to be filed by

any property owner who would have a common border on any portion of the perimeter of the property sought to be altered. In *Village of Bannockburn v. County of Lake, 17 Ill.2d 155,* an objection under section 5 was filed by one who owned property located directly across a roadway from the land sought to be rezoned. It was argued that the term "frontage" as used in the statute should be equated to the perimeter of the property sought to be rezoned. This construction was rejected, and at pages 158-59 the court stated, "In reading the language of the statute here, we find no need whatsoever for construction, interpretation or labored effort to ascertain the legislative intention. In this statute there is neither ambiguity nor room for construction. It seems to us abundantly clear that the legislature expressed its intention in clear and unmistakable terms and the only function of the court under such circumstances is to declare and enforce the law as enacted by the legislature. (*Belfield v. Coop, 8 Ill.2d 293.*) The word 'frontage' has a common, ordinary meaning and, obviously, that meaning was intended in the statute here under construction. 'Frontage' means that part of the parcel sought to be rezoned that gives access frontage on a roadway, alley or other public way. Property that is adjacent and contiguous to a stream, highway or road may be said to have frontage thereon. There is no indication to be found in the statute that any meaning other than the usual and customary meaning of the word was intended. We, thus, must use the definition above set forth, which is certainly commonly accepted. See *Standard Oil Co. v. Kamradt, 319 Ill. 51.*"

Here, the majority of the appellate court has accepted the definition of the term "frontage" as applied to that category of objectors involved in *Bannockburn* but has given a contrary definition to the same term when it is used to describe that class of objectors who have property adjoining or across an alley from the property to be rezoned. Where a meaning is attributed to a word and it

again appears in the same statute, it should be given consistent meaning unless a contrary legislative intent is clearly expressed. (*Moran v. Katsinas, 16 Ill.2d 169, 174; People ex rel. Lipsky v. City of Chicago, 403 Ill. 134, 142.*) In *Bannockburn* the court found that the legislature had expressed its intent in precise and unmistakable language and that the term "frontage" was not synonomous with the property's perimeter. The definition of the term "frontage" as determined in that case is applicable herein and the conclusion that the Klecka-Most tracts had sufficient "frontage" based only on their contiguous boundaries with plaintiffs' land is erroneous.

However, it is alternatively suggested that the Klecka objection alone is sufficient, for the 330 feet of that property which adjoins Cottage Grove Avenue amounts to twenty percent of the frontage necessitated by section 5. This conclusion is reached by interpreting section 5 as requiring that the twenty percent be calculated by comparing the ratio of the frontage of the land for which an objection is filed to the total frontage for which a protest could be filed. In this case it is urged that the property contiguous to the roadway located to the north of plaintiffs' land, for which no objection was filed, is 1320 feet. Thus the total frontage for which a protest could be made consists of 1650 feet and the Klecka portion is exactly twenty percent of this amount.

We find this reasoning unpersuasive. In *Bannockburn* the standard set forth required that the objectors have frontage which is at least equivalent to twenty percent of the frontage sought to be altered. (17 Ill.2d at 159.) The proper method of calculating the percentage in this instance is the same, and Klecka's 330 feet is substantially below the minimum required.

Plaintiffs argue that the class of protestors who are purported "owners" of property directly across Cottage Grove Avenue from their property have not fulfilled the statutory requirements of section 5. It was alleged in the circuit court that several of these objectors did not own

their property. An affidavit filed by two of these objectors stated that they were contract purchasers of their property, and it was suggested in oral argument of this cause that the other parties challenged by plaintiffs on this basis are contract purchasers, although the record is unclear as to their actual status.

Plaintiffs contend that contract purchasers are not "owners" for purposes of section 5. In support of their position they cite *Warren v. Lower Salt Creek Drainage Dist., 316 Ill. 345, 347,* wherein it was stated that the term "owner," when used in conjunction with real estate, refers to one who possessed a fee-simple estate. This construction would appear to be dispositive of the issue. However, we would be less than candid if we did not recognize that the limited definition of "owner" as set forth in *Warren* has not been uniformly applied. In *People ex rel. Hart v. Village of Lombard, 319 Ill. 56, 59,* the court stated, "The word 'owner' has been defined to include one who has the use, control or occupation of the land with claim of ownership, whether his interest be an absolute fee or a less estate." (See also *Woodward Governor Co. v. City of Loves Park, 335 Ill. App. 528.*) We are of the opinion that the statute itself must be examined to determine the meaning of the term "owners" based upon the context in which it is used.

In *Bredberg v. City of Wheaton, 24 Ill.2d 612,* the court concluded that a statute, comparable to section 5, was designed to afford a right of protest to qualified persons who would be most affected by a zoning change. Contract purchasers of land that is directly across a roadway, an alley or adjoins the property sought to be rezoned will ultimately be no less affected if they fulfill the terms of their contracts than those who may have a fee estate yet finance their purchase by a conventional mortgage. Moreover, cognizance has been given to the significant property interest which contract purchasers acquire. (*Rosewood Corporation v. Fisher, 46 Ill.2d 249, 257.*) Therefore we hold that contract purchasers, who

otherwise meet the qualifications set forth in section 5, may be considered "owners" for the purpose of objection to an alteration of a zoning classification.

Plaintiffs have finally argued that one written protest was invalid for it was signed by only one joint owner. The property in question is owned by a husband and his wife. However, the former was the only one who signed the protest to plaintiffs' proposed rezoning. In *Bannockburn* the argument was made that a protest was invalid because one of the joint owners also signed the name of her husband at the same time that she signed her own name. The court agreed that the trial court properly found that the technical objection to the acknowledgement of the protest was without merit. We perceive no substantial dissimilarity presented in this case because of the failure of one spouse to sign the protest as joint owner. We now hold that, in the absence of a contrary specification in the ordinance, the protest of one joint tenant is sufficient to align the property against a proposed change in the zoning.

We have resolved the sufficiency of two objections by those claiming an interest in property situated across from the frontage sought to be altered. Plaintiffs have not challenged the validity of a third protest. However, the property interests of those within this category who filed the remaining two objections are uncertain from this record. We therefore reverse the judgment of the appellate court and remand to the circuit court of Will County for further proceedings in order that the interests of these parties may be disclosed. If evidence adduced demonstrates that these parties were contract purchasers of their respective properties, then it would appear that sufficient objections were filed under section 5 of the County Zoning Act to require a three-fourths approval for rezoning of plaintiffs' property. If this results, the circuit court is directed to sustain the decision of the Will County board of supervisors.

*Reversed and remanded, with directions.*