(No. 37686.—)

RAY TREADWAY *et al.,* Appellants, *vs.* THE CITY OF ROCK-FORD *et al.,* Appellees.

*Opinion filed May 27, 1963.—Rehearing denied September 26, 1963.*

BERRY & SIMMONS, of Rockford, for appellants.

BROWN, CONNOLLY AND PADDOCK, and WILLIAM E. COLLINS, Corporation Counsel, both of Rockford, (DAVID S. PADDOCK, of counsel,) for appellees.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

Plaintiffs appeal directly from a decree of the Winnebago County circuit court dismissing for want of equity plaintiffs' complaint for a declaratory judgment that an ordinance of the city of Rockford rezoning certain property from a residential to a business classification was unconstitutional and to enjoin certain defendants from proceeding to build a shopping center.

The trial judge certified that the case involves the constitutionality of a zoning ordinance, but he failed to certify that in his opinion the public interest required a direct appeal. Although the certificate is insufficient to confer jurisdiction on direct appeal, the case is properly before us because a constitutional question is involved. (See *Illinois National Bank & Trust Co. of Rockford* v. *County of Winnebago,* 19 Ill.2d 487; *La Salle National Bank of Chicago* v. *County of Cook,* 12 Ill.2d 40.) No question is raised on the pleadings.

We considered an ordinance of the city of Rockford, rezoning this same property, which contained conditional limitations, and a judgment of the circuit court of Winnebago County, which included in its order a number of conditions and restrictions not included in the ordinance. We reversed the judgment and remanded the cause for the reasons stated in the opinion. (*Treadway* v. *City of Rockford,* 24 Ill.2d 488, decided in March, 1962.) The rezoning ordinance involved in this appeal was passed by the city council of the city of Rockford on June 26, 1962, and reclassifies the subject property from "A" residential to local business zoning, without the conditional limitations which were the basis for our prior remandment.

Plaintiffs' complaint was based on the theory that the nearby surrounding area was on June 26, 1962, entirely residential in character and alleged that plaintiffs as home

owners residing in the area have a special interest and will suffer a special damage and contend that the proposed shopping center is unneeded in the immediate area and would decrease the value of their residential property by increasing the vehicular traffic congestion at the intersection of North-South Rockton Avenue, and East-West Halsted Road, the center of which is the location of the corporate limit line on the northwest perimeter of the city of Rockford, both being four-lane thoroughfares from within the city to that point, but of lesser width beyond. Plaintiffs complain that the proposed shopping center in the area would be generally offensive due to noise, lights, confusion, debris, trash and odors attendant upon the maintenance and operation of the proposed businesses.

Defendants answer that plaintiffs have not rebutted the presumption of validity of the rezoning ordinance, urging that all of the evidence in the record fails to show clearly and affirmatively that the ordinance is arbitrary, unreasonable and oppressive and bears no substantial relation to public welfare.

The subject property is a rectangular tract extending 374 feet east and 640 feet south from the center of the Rockton-Halsted intersection, being about 4½ acres in the northwest corner of a 25-acre tract purchased in 1959 by defendant Lakewood Subdivision Company, then classified Class "A" residential. As shown on plaintiff's exhibit 1, the surrounding property is all classified Class "A" residential, except certain portions thereof including the area outside of the corporate limits known as the Glenny farm lying immediately northwest of the intersection, occupied as a farm home and zoned for agriculture, the property immediately west of the Glenny farm and a narrow strip running both west along the south side of Halsted Road and south along the west side of Rockton Avenue, all of which are zoned Class "C" residential, for multi-family

units; the area lying south of the subject property is zoned Class "B" residential for two-family units, and beyond that along the east side of Rockton Avenue is Class "C" residential property. Located on the west side of Rockton Avenue three blocks south of the subject property is the Rockton Avenue Center, zoned local business, and not completely occupied or developed.

The original 25-acre tract has been subdivided by defendant Lakewood Subdivision Company and partially developed for residential occupancy, including Chateau Lane which extends along the southerly boundary of the subject property. This street is located one lot depth or more northerly from a drainage way which extends across the entire tract in a generally diagonal direction from southwest to northeast. Elementary schools are located on Halsted Road, one west and one east, each 5 blocks distant from the intersection. A parochial school is located 9 blocks south on Rockton Avenue. The traffic through the Halsted and Rockton intersection was 7800 vehicles per day in 1961 and had increased from 5378 vehicles per day in 1958, a 45% increase, during which time the number of families living in the primary and secondary trade areas designated by defendant city's land planning consultant, Robert J. Piper, had increased from 3116 families to 3400, or 9.3% increase. He testified that the highest and best use of the subject property is for local business and that there is need at this time for the commercial facilities proposed by defendants, including a gas service station, a supermarket, a bakery store and a drug store.

Plaintiff Treadway owns and occupies a residence located on the north side of Halsted Road, 286 feet east of the northwest corner of the subject site, and plaintiff Rockwell likewise owns and occupies a residence located on Halsted Road 418 feet distant from the same point. Plaintiff Ambruoso owns and occupies a residence located two blocks south of the southwest corner of the subject prop-

erty and one block and 4 houses east of Rockton Avenue. Treadway values his house above $25,000, Rockwell at $38,000, and Ambruoso at $19,000. Plaintiffs' real-estate expert valued Treadway's house at $26,000, and estimated that a shopping center on the subject property would depreciate this property $4,000 and that Rockwell's property, valued by him at $33,000, would thereby be depreciated $5,000. He valued the Frank Ingrassia property, consisting of 3½ acres located on the northeast corner of the intersection, at $34,000 and estimated the resulting depreciation at $8,000. He noted that all four corners of the intersection were now vacant and offered his opinion that each of them would likewise be available for reclassification for local business and would be sought after for other gas station sites. In Chateau Lane he valued the one-and-two-family houses located on the east and south around the proposed shopping center, built within the last 3 years, at $13,000 to $20,000, and stated they would suffer some depreciation varying from 8 to 10% of their value. The adjoining 5 lots to the south of the subject property are still vacant, and defendant Lakewood Subdivision Company intends to apply for a multi-family classification for these lots now zoned for single-family residences. Plaintiffs' expert also stated that the four-family apartments, ranch style, one-story, located west of Rockton and south of Halsted and valued at $34,000 to $50,000, being new, substantial and respectable places, would suffer minor depreciation because there would be some effect on the rental desirability of these apartments. He stated there would be an increase in traffic, noise and artificial lights from the shopping center. He gave his opinion that the subject property is valuable for residential lots and that homes built thereon would be readily saleable. He had no opinion as to why all four of the properties at the intersection were vacant.

Evidence presented by defendants shows that defend-

ant Lakewood Subdivision Company has sold 70 houses averaging $17,000 and other lots within the subdivided area of the original 25-acre tract. Harley Swanson, testifying as a real-estate expert, valued the Ingrassia tract on the northeast corner of the intersection at $45,000 and the home immediately east thereof at $75,000 and stated that local business across the street would not depreciate either property. He testified that the Treadway and Rockwell properties would not be depreciated, and that the properties immediately east of the subject property would have either no devaluation or possibly a 5% decrease in value. He testified that the property across Halsted and the property lying south of the subject property would not be depreciated by the shopping center. He noted that during the past two years the area had developed with homes and apartment buildings and stated that it is not logical that the four vacant corners of this intersection be developed as residential due to the nature of the traffic. William F. Frazen, a real-estate appraiser, testified that the value of the 4½-acre subject site was increased from $31,500 to $90,000 by the reclassification from Class "A" residential to local business. He testified the Ingrassia property would be devalued 10%, the property immediately east thereof would be devalued 5 to 10% and that the Treadway and Rockwell tracts would not be depreciated. He stated that the abutting properties in the Lakewood subdivision would be devalued 10%, there being two now improved and three that were not improved. He testified that the lots immediately south of the subject property, as "B" residential, would suffer a 10% loss in value, and, as "C" residential, a 5% loss in value. As to lots zoned for apartments he saw no loss in value. He stated the highest and best use of the subject property is for local business use, and that such use would be a convenience to the residents of the nearby apartments.

The administrator for the planning commission of the

defendant city of Rockford testified the highest and best use of this subject site is local business, that the layout of planned improvements shown by defendants' exhibit No. 2 meets the requirements of the Rockford land use plan, that the surroundings are compatible because of the multiple-family units in the adjacent area and the contemplated multiple-family units to the south.

He testified the nature of the intersection itself indicates this type of facility would be extremely convenient to the neighborhood, but admitted that there was nothing about the intersection that would prevent its use for residential purposes. He thought there was a need for this shopping center on these secondary roads, but no more of them should be placed in the immediate area. A traffic engineer for the defendant city gave his opinion that traffic at the intersection would probably increase to 750 cars per hour within 3 years. Other adjacent subdividers and two nearby property owners testified favorably to the local business zoning of the subject tract.

As this court has stated in *Garner* v. *County of Du Page*, 8 Ill.2d 155, in this equity proceeding, which involves a complaint that the corporate authorities have wrongfully permitted a use of the subject property by the defendants, the plaintiffs have the burden of proving that they have suffered a special damage by reason of such uses which differs from that suffered by the general public. (*Bullock* v. *City of Evanston*, 5 Ill.2d 22; *Avery* v. *Village of La Grange*, 381 Ill. 432; *People ex rel. Terp* v. *Washingtonian Home of Chicago*, 361 Ill. 522.) It is our opinion, on the basis of the record testimony relating to the depreciation which would be suffered by plaintiffs' property if the proposed construction proceeds, that plaintiffs Treadway and Rockwell have demonstrated a sufficient special interest and damage to justify maintenance of this action.

In *La Salle National Bank* v. *Cook County*, 12 Ill.2d 40, 46-47, we stated that "among the facts which may be

taken into consideration in determining validity of an ordinance are the following: (1) The existing uses and zoning of nearby property, [citations,] (2) the extent to which property values are diminished by the particular zoning restrictions, [citations,] (3) the extent to which the destruction of property values of plaintiff promotes the health, safety, morals or general welfare of the public, [citations,] (4) the relative gain to the public as compared to the hardship imposed upon the individual property owner, [citation,] (5) the suitability of the subject property for the zoned purposes * * * and (6) the length of time the property has been vacant as zoned considered in the context of land development in the area in the vicinity of the subject property."

While we have repeatedly held zoning to be primarily a legislative function, with the exercise of which the judiciary should not interfere in the absence of a clear showing of unreasonable or capricious action, we have not hesitated to act in those situations where such showings were made. (*People ex rel. Chicago Title and Trust Co.* v. *Village of Elmwood Park,* 27 Ill.2d 177.) We believe such to be true here. For a distance of at least three blocks in all directions, the area is residential in character and continuing to develop in this fashion.

The subject property has a substantial value for residential purposes, and it is apparent that no unusual problem would be encountered in its development for that purpose. All witnesses agreed that there is a steadily increasing number of living units built under the original zoning. As we said in *Liberty National Bank of Chicago* v. *City of Chicago,* 10 Ill.2d 137, 143: "Of paramount importance in determining the validity or invalidity of the given classification is the question whether it is in conformity with existing uses and the zoning classification of nearby property."

Defendants' witnesses testified to a need for a shop-

ping center on the subject site even though it is admitted that there is a shopping center only three blocks away, and that 60% of that center was undeveloped at the time of these hearings. While the testimony as to the property values which would be adversely affected by the proposed project varied, both as to the property location and the percentage of depreciation, there was general unanimity that residential property values would suffer.

It is further undisputed that defendants, who have sought and secured the zoning amendment here contested, purchased the tract in question knowing its restricted status for residential purposes; they are, therefore, not in the same position as landowners whose property is subsequently zoned for more restrictive purposes than existed at the time of purchase. (*People ex rel. Alco Deree Co.* v. *City* of *Chicago,* 2 Ill.2d 350.) And while an increase in property values of the subject site resulting from the proposed use, as contrasted with the permitted use, is a universal feature of zoning cases and is entitled to serious consideration, it is but one of several factors and not conclusive. *Liberty National Bank of Chicago* v. *City of Chicago,* 10 Ill.2d 137, 143; *First National Bank of Lake Forest* v. *County of Lake,* 7 Ill.2d 213, 227.

In our opinion the proposed business use is incompatible with the orderly development of this predominantly residential area and represents an unreasonable and unconstitutional exercise of the legislative function. The judgment of the circuit court of Winnebago County is therefore reversed and the cause remanded, with directions to enter a decree in accordance herewith.

*Reversed and remanded, with directions.*