Forestview Homeowners Association, Inc. *et al.*, Plaintiffs-Appellants, *v.* the County of Cook *et al.*, Defendants-Appellees—(The Village of Northbrook, Intervenor-Plaintiff-Appellant.)

(No. 57777;

First District (2nd Division)—March 5, 1974.

Gordon & Brustin, Ltd., of Chicago (Robert E. Gordon, of counsel), for appellants.

Haskins & Haskins, of Chicago (Charles G. Haskins, of counsel), for appellees.

Frederic O. Floberg, R. Marlin Smith, and Edward F. Ryan, all of Ross, Hardies, O'Keefe, Babcock & Parsons, of Chicago, for intervenor-appellant.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

This appeal arises from a dispute concerning the validity of an amendatory zoning ordinance and a special use granted by the Board of Commissioners of Cook County. Plaintiffs Forestview Homeowners Association, Charlemagne Homeowners Association, Sutton Point Homeowners Association, Huntington Homeowners Association, all Illinois not-for-profit corporations, together with two individuals, George Wilson and Jane Wilson, his wife, filed a suit against the County of Cook, Raymond J. Welsh, its commissioner of buildings, Bernard J. O'Brien, its zoning administrator, Newton F. Korhumel, Thomas Origer, Origer Builders, Inc., a foreign corporation and the Cook County Recorder of Deeds, Sidney R. Olsen. Thereafter, the Village of Northbrook, an Illinois municipal corporation, was granted leave to intervene as a plaintiff.

In their respective complaints, the original plaintiffs and the intervenor sought a declaration that an ordinance which rezoned a 96-acre parcel of land from R-3 single family to R-6 general residence district, and a special use granted by the Board of County Commissioners of Cook County, were void. The plaintiffs and intervenor prayed for an injunction, preliminary and permanent, restraining the County of Cook and its officials from issuing any building permit for construction of a proposed multiple-family housing project which would have been permissible under the R-6 zoning created by the amendatory ordinance. They also prayed for an injunction restraining the owners of the 96-acre tract from constructing on the land the proposed housing project or devoting the land to any use other than one permitted under the R-3 zoning of the Cook County Zoning Ordinance. After disposing of preliminary motions and hearing evidence, the trial court found that equity was with the defendants and entered a decree in their favor.

The original plaintiffs and the intervenor then took separate appeals

to this court. Thereafter, on motion of the intervenor pursuant to Supreme Court Rule 305(g),[1] we entered an order staying enforcement of the decree pending the appeals. Defendants (County of Cook, its officials, Thomas Origer and Origer Buildings, Inc.) filed cross-appeals limited to a review of the question whether the trial court erred when it granted the Village of Northbrook leave to intervene as a plaintiff in the original suit. However, neither the County of Cook nor its officials have appeared in this court and filed a brief, either in support of the decree below or in support of their cross-appeal. Thomas Origer and Origer Builders, Inc., have appeared and filed a brief, but they do not, in compliance with Supreme Court Rule 343(b)(i),[2] argue the issue they sought to raise as cross-appellants. Despite this fact, and without the assistance of a brief by the County of Cook, we will decide the appeals and cross-appeals, including whether the Village of Northbrook had standing to intervene in the suit. We begin with a summary of the material facts, concerning which, in the main, the parties appear to be in agreement.

I.

In 1968, near the end of the year, the defendant Thomas Origer purchased a five-parcel 96-acre tract of land in Cook County for $1,200,000. The tract was rectangular in shape, one-half in Wheeling Township, and one-half in Northfield Township, and the land which composed it was vacant. Its northern border was 600 feet south of Lake-Cook Road in an unincorporated area of the county; its southern border, Forestview Road, was about a mile and a half from the village limits of Northbrook, Illinois. Its eastern border was Sanders Road, a two-lane macadam-surfaced highway; and on the west it was bordered by some single-family homes and the Cook County Forest Preserve. The tract was then zoned R-3 single-family-residence district under the Cook County Zoning Ordinance. All of the land immediately surrounding it, except for one property on its northern border on which a riding stable was being constructed, was

---

[1] Supreme Court Rule 305(g), Ill. Rev. Stat. 1971, ch. 110A, par. 305(g).
"Appeals by Public Agencies. If an appeal is prosecuted by a public, municipal, governmental, or quasi-municipal corporation, or by a public officer in his official capacity for the benefit of the public, the trial court, or the reviewing court or a judge thereof, may stay the judgment pending appeal without requiring that any bond be given."

[2] Supreme Court Rule 343(b)(i), Ill. Rev. Stat. 1969, ch. 110A, par. 343(b)(i).
"(i) Cross Appeals. A cross appellant shall file a single brief as appellee and cross appellant at the time his brief as appellee is due; the appellant's answer to the arguments on the cross appeal shall be included in his reply brief; and the cross appellant may file a reply brief confined strictly to replying to those arguments within 14 days after the due date of the appellant's reply brief."

also zoned R-3 residential and was either vacant, had single-family homes on some of the lots, or was part of the Cook County Forest Preserve.

The tract was part of a 25-to-30-square-mile area patrolled by the Cook County sheriff's police. The patrol consisted of a one-man vehicle that operated 24 hours a day. In addition, the sheriff's police made specific requests for assistance from police departments of municipalities within the area. Fire protection was furnished by volunteer fire departments or by cooperation with other municipalities such as the Village of Northbrook. With regard to sewerage, it was contemplated that development of the tract would require connection with the Walters Avenue pumping station which serves the 1100 acres of land in the Des Plaines River watershed not served by gravity connections to existing interceptors. The pumping station discharges into an interceptor sewer that has a total capacity of 12.1 million gallons per day. The Metropolitan Sanitary District of Greater Chicago computes sewer design requirements by assuming that there will be a demand for 155 gallons of capacity for each person per day in the area served by the pumping station.

The 96-acre tract of land was partly in School District 27, an elementary school system that had three schools from kindergarten through the sixth grade. In addition, the system had one junior high school and a second junior high under construction. At the time of this litigation, the three elementary schools, including the one closest to the tract, were operating at capacity. School District No. 27 had almost exhausted its bonding power and did not expect to have money available for the construction of a new elementary school for at least 2 years. One elementary school in the district had been the subject of additional construction; and school authorities had been compelled to acquire a temporary kindergarten facility in a local church. Double shifts of school classes had been avoided by making use of classroom facilities available in an adjoining school district. The Board of Education could not determine whether, in the future, funds would be available to meet plans for expansion of facilities for the education of children who live in the district.

A short time after defendant Origer acquired the tract of land, an application was made to the Cook County Board of Commissioners that the applicable provision of the Cook County Zoning Ordinance be amended to reclassify the tract from R-3 single-family to an R-6 general-residence district and that a special use be granted to permit the construction of a multi-family housing development totaling 2,003 dwelling units to house a population between four and six thousand persons. There was to be a total of 2,982 parking spaces to accommodate automobiles owned by persons who were to live in the housing development. Cook

County zoning authorities were informed by the developer that the one-bedroom units were to be rented for $200 to $225 per month; the three-bedroom units for $250 to $300 per month. Water for the development was to be provided by one or two deep wells drilled on the land. Sanitary sewer mains from the tract were to be connected with the Walters Avenue pumping station, a mile and a half to the south. Storm water drainage was to be through a retention basin; and from there, storm waters could flow by open or closed drainage to a river on the west.

The applications for the amendatory zoning ordinance and for grant of the special use were referred to the Cook County Zoning Board of Appeals, which held three public hearings between April 14, 1969 and May 2, 1969. The original plaintiffs, the intervenor Village of Northbrook, and municipalities which were one and a half miles from the tract, appeared and objected to grant of the applications. On May 13, 1969, the president and the board of trustees of intervenor Village of Northbrook adopted Resolution 69-R-42, in conformance with Ill. Rev. Stat. 1967, ch. 34, par. 3158, and objected to rezoning of the 96-acre tract and to grant of the special use. A certified copy of the resolution was filed with the clerk of Cook County, the secretary of the Cook County Zoning Board of Appeals, and the president of the Cook County Board of Commissioners. Thereafter, on October 27, 1969, the Zoning Board of Appeals submitted its findings and recommended to the Cook County Board of Commissioners that it adopt the amendatory zoning ordinance requested and grant the special use. On November 30, 1970, the Board concurred in these recommendations. Thereafter, the suit in this case was filed.

To sustain the allegations of their respective complaints, the original plaintiffs and the intervenor called 3 witnesses who were experts; 9 whose testimony bore on the claim that adoption of the amendatory zoning ordinance and grant of the special use was arbitrary and unreasonable; 11 who were owners of single-family residences contiguous to the 96-acre tract and who, according to their testimony, had relied on the R-3 single-family zoning of the area when they purchased their homes. Defendants called as their witnesses the defendant Thomas Origer and three experts. After hearing all the evidence, the trial court made oral findings and concluded that lack of a comprehensive zoning plan by the County of Cook did not render the amendatory zoning ordinance or grant of the special use invalid. Although the trial judge found the evidence tended to indicate that construction of the planned development would have some depreciatory effect on the homes of the plaintiffs along Forestview Drive, he said, "*  *  * I am unable to find on the basis of the conflicting evidence presented that the depreciatory effect

would be in any specific percentage amount, and I can only find in a general way that the homes are not particularly benefited by the construction of this planned development." The court then entered a decree dismissing the complaints with prejudice.

Urging that the decree be reversed, the original plaintiffs and the intervenor present three issues for our review. 1. Whether the procedure followed in this case by the Board of Commissioners of Cook County invalidated the Board's adoption of the amendatory zoning ordinance and its grant of the special use. 2. Whether the failure of Cook County to plan comprehensively for the use and development of land in the county's unincorporated areas, and its failure to relate its rezoning decisions to data files and plans of other county agencies, weaken or destroy the presumption of validity which otherwise would attach to a county zoning ordinance. 3. Whether, measured by applicable standards of reasonableness, the decision of the Board of Commissioners of Cook County to rezone the 96-acre tract and grant a special use was an arbitrary and capricious exercise of its power to regulate the use and development of land within its jurisdiction.

## II.

Before reviewing these issues, we will decide the question to which defendants restricted their cross-appeals; namely, whether the trial court erred in allowing the Village of Northbrook to intervene in the suit on file. In deciding this question, we must determine whether after July 1, 1971, the Village of Northbrook, a municipality which has a population of more than 25,000, had standing to intervene as a plaintiff in a suit to enjoin the enforcement of a rezoning ordinance and a special use that concerned land outside of, but within 1½ miles of its territorial limits.

■■ The intervention sought by the Village, and which the trial court granted, was in accordance with the Civil Practice Act, which provides that "[u]pon timely application anyone may in the discretion of the court be permitted to intervene in an action: * * * (b) when an applicant's claim or defense and the main action have a question of law or fact in common." (See Ill. Rev. Stat. 1969, ch. 110, par. 26.1(2)(b).) This was permissive discretionary intervention. It is generally said that intervention under our procedure is a matter largely left to the trial court's discretion, and its determination allowing or disallowing intervention will not be disturbed on appeal unless clear abuse is shown. (*Hurley v. Finley*, 6 Ill.App.2d 23, 28, 126 N.E.2d 513.) Rules and statutes pertaining to intervention are liberally construed. *Williams v. City of Bloomington*, 108 Ill.App.2d 307, 247 N.E.2d 446.

In this case, no statute specifically permitted but none prohibited inter-

vention by the Village of Northbrook. (Compare *In Re Leyden Fire Protection District*, 4 Ill.App.3d 273, 280 N.E.2d 744.) It is true that prior to July 1, 1971, Illinois appellate courts, with apparent consistency, held that a village or city lacked statutory authority to litigate the validity of a county zoning ordinance that affected land outside its corporate boundaries. (*Village of Bensenville v. Du Page Couny*, 30 Ill.App.2d 324, 174 N.E.2d 403 (abstract opinion); *Village of Mount Prospect v. County of Cook*, 113 Ill.App.2d 336, 252 N.E.2d 106; *Krembs v. County of Cook*, 121 Ill.App.2d 148, 257 N.E.2d 120 (abstract opinion); *Village of Arlington Heights v. Cook County*, 133 Ill.App.2d 673, 273 N.E.2d 706; *Village of Arlington Heights v. County of Cook*, 3 Ill.App.3d 213, 278 N.E.2d 841; compare *Dato v. Village of Vernon Hills*, 62 Ill.App.2d 274, 210 N.E.2d 626; see Annot., 49 A.L.R.3d 1126.) However, on July 1, 1971, the Illinois Constitution of 1970 went into effect. Under the provisions of its article VII, section 6(a), the Village of Northbrook became a home rule unit. The pertinent part of that article provides that "[e]xcept as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare   *   *   *."

■■ We hold that this provision was intended to give a qualifying unit of local government constitutional authority to exercise any power and perform any function pertaining to its government and affairs. (See S.H.A. Const. Art. 7, § 6(a), Helman and Whalen, Constitutional Commentary.) It is well known that unless there is a constitutional or statutory prohibition, a municipality is privileged to seek protection of public rights by injunctive relief on the same footing that a private person or a corporation may seek such redress. (*Chicago, Burlington & Quincy R.R. Co. v. City of Quincy*, 136 Ill. 489, 27 N.E. 232, 17 McQuillan, Municipal Corporations § 49.57 (3d ed. 1968).) When a municipality engages in litigation to enforce the public policy manifested by its ordinances, it is engaged in a governmental function. (See *Ellis v. City of West University Place* (1943), 141 Tex. 608, 175 S.W.2d 396; *Swafford v. City of Garland* (Tex. Civ. App. 1973), 491 S.W.2d 175; compare *Rivera v. City of Amsterdam* (1958), 5 App.Div.2d 637, 174 N.Y.S.2d 530.) As alleged in its tendered amended complaint, the ordinances of the Village of Northbrook reflected a valid governmental interest in the subject of the litigation, even though the land involved was outside its boundaries. (Compare *People ex rel. City of Salem v. McMackin*, 53 Ill.2d 347, 291 N.E.2d 807; *City of Chicago v. Wonder Heating & Ventilating Systems, Inc.*, 345 Ill. 496, 178 N.E. 192; *City of Chicago v. National Brick Co.*, 331 Ill. App. 614, 73 N.E.2d 647 (abstract opinion); see 62 C.J.S. Municipal

Corporations § 141; Biebel, *Home Rule in Illinois*, 6 J.M.J. Pr. & Proc. 253, 297.[3]) Therefore, the trial court did not err when, in the exercise of its discretion, it allowed the Village to intervene in the suit as a plaintiff.[4]

The application to rezone the 96-acre tract, and for the special use, was referred to the Zoning Board of Appeals of Cook County. Some of the original plaintiffs, the Village of Northbrook and other municipalities within 1½ miles of the tract, appeared and voiced their objections to the rezoning and to grant of the special use. In addition, the Village of Northbrook adopted and filed with the County Clerk of Cook County, written objections to the rezoning. After hearings that were continued over 3 days, the zoning board, on October 27, 1969, submitted its findings to the Board of Commissioners of Cook County and recommended that the tract be rezoned from R-3, single family, to R-6, general residence; and that a special use be granted to permit construction of a multi-family development on the rezoned land.

Article VI, section 6.8g(3) of the Cook County Zoning Ordinance provided that "[i]f an application for a proposed amendment is not acted upon finally by the Board of Commissioners of Cook County within sixty (60) days of the time of receipt of the Zoning Board of Appeals' recommendations, it shall be deemed to have been denied." The Board of Commissioners did not act on the Zoning Board's recommendations within 60 days. On November 30, 1970, however, more than 1 year after the recommendations were made, and without notice to the interested parties that it was going to act on that day, the Board had before it a report of its Committee on Public Service. This report recommended, among other things, an award of contracts for equipment and service to three divisions of county government, rejection of bids on a truck and a bus for the county sheriff's police, dismissal of an application for rezoning of land in Rich Township, dismissal of an application for rezoning

---

[3] Moreover, we observe that article VII, section 6(c) of the Illinois Constitution of 1970 provides that if a home rule ordinance conflicts with an ordinance of a municipality, the municipal ordinance shall prevail within its jurisdiction. This language, although not strictly applicable to this case, suggests the intent of the Constitutional Convention to recognize a priority of municipalities over counties when matters of local concern are involved.

[4] We take judicial notice that much of unincorporated Cook County, as it develops, becomes annexed to existing municipalities. Therefore, the Village of Northbrook not only had a right, but a duty, to concern itself with the development of property practically adjoining its village limits. This property, the 96-acre tract, was close enough so that the village, within the interests of its police powers, was rightfully concerned with the effect its development would have on the public health, safety, welfare and morals within the village. As a practical matter, highways, public water supply, sanitary sewers, storm sewers and drainage affected by nearby properties, in turn, directly affect the Village in discharging its duties within the scope of its police powers.

and special use in Leyden Township and the placing on file of applications for special uses in Elk Grove and Palatine Townships. In a paragraph that followed these items, the committee recommended that on approval of its report, the amendatory zoning ordinance be adopted and the special use be granted. A roll call followed; and, without any indication that rezoning of the 96-acre tract and the special use were being specifically approved, ten members of the Board voted yea, two nay. At the time, the Village of Northbrook, and other municipalities, had objected to the rezoning and had filed these objections with the county clerk. It was then the law that if the objections of a municipality to a zoning amendment were "* * * filed with the county clerk, such amendment shall not be passed except by the favorable vote of three-fourths of all the members of the county board." Ill. Rev. Stat. 1967, ch. 34, par. 3158.

Pointing to the fact that the Board of Commissioners of Cook County voted on the proposed rezoning and special use more than a year after the Zoning Board of Appeals made its recommendations; and, to the further fact that when it did, the vote was to approve a committee report that included seven other proposals, the original plaintiffs and the intervenor contend that this procedure invalidated the actions of the Board. We agree with this contention.

In *Cosmopolitan National Bank v. City of Chicago*, 27 Ill.2d 578, 190 N.E.2d 352, an amendatory ordinance was proposed in the Chicago City Council on March 26, 1958, and adopted on November 25, 1958. At the time, the City's zoning code provided, in part, that "[i]f an application for a proposed amendment is not acted upon finally by the City Council within six (6) months of the day upon which said application is filed by the City Clerk with the City Council it shall be deemed to have been denied." In a suit to set aside the ordinance as a cloud on real estate, the trial court entered a decree which found that the ordinance was void because it was adopted more than 6 months after application for it was filed. The City appealed to the Illinois Supreme Court. There it was held that in view of the provisions of the city's zoning code, an amendatory zoning ordinance not passed within 6 months from the filing of the application for it, and passed without the notice and hearing required by the ordinance, was void.

■■ In our judgment, this decision controls the case before us. Under the provisions of Ill. Rev. Stat. 1967, ch. 34, par. 3158, the right to protest against a proposed zoning amendment is given to abutting property owners and to municipalities within 1½ miles of the property involved. No amendment to a county zoning ordinance can be adopted without a hearing. These are important rights which our law gives citizens whose

personal and property interests are affected by a proposed rezoning ordinance. (See *Chapman v. County of Will*, 55 Ill.2d 524, 304 N.E.2d 287.) During the 1 year of inaction when the recommendations of the Zoning Board stood before the Board of Commissioners, events could have transpired and developments could have occurred which would have justified a hearing by the Zoning Board of Appeals after its recommendations were deemed denied. Therefore, adoption of the amendatory ordinance and grant of the special use by the Board of Commissioners of Cook County, more than 1 year after the zoning board's recommendations, without notice to the citizens involved, were void and of no effect. *Cosmopolitan National Bank v. City of Chicago*, 27 Ill.2d 578, 583, 190 N.E.2d 352.

Accordingly, we do not reach the questions raised by plaintiffs and the intervenor concerning the package vote taken by the Board of Commissioners of Cook County on November 30, 1970, when it approved the report of its committee on public service. Therefore, we will not resolve the issue whether a zoning amendment which cannot be passed "* * * except by the favorable vote of three-fourths of all the members of the county board * * *" can be adopted by a roll call vote approving the report of a committee containing other proposals. We conclude, however, that approval of the Zoning Board's recommendations, more than 1 year after they were made, invalidated adoption of the amendatory zoning ordinance and grant of the special use.

## IV.

Ordinarily, this conclusion would end discussion of the issues that remain. But in this case, resolution of the remaining issues is necessary because "[o]therwise the [Board of Commissioners] would only have had to pass another amendatory ordinance with the [R-6] classification, thus subjecting plaintiffs and our courts alike to a second round of costly and time consuming litigation." (*Cosmopolitan National Bank v. City of Chicago*, 27 Ill.2d 578, 581, 190 N.E.2d 352.) For this reason, we turn to the issue whether the failure of Cook County to plan comprehensively for the use and development of land in the county's unincorporated areas, and its failure to relate its rezoning decision to data files and plans of other county agencies, weaken or destroy the presumption of validity which otherwise would attach to a county zoning ordinance.

■■ There is recurring recognition that a comprehensive plan is a factor to be considered in determining the validity of an amendatory ordinance adopted by the zoning authorities of a county. (See *Roseta v. County of Washington* (1969), 254 Ore. 161, 458 P.2d 405.) At the time relevant in this case, comprehensive county zoning outside the limits of cities, vil-

lages and incorporated towns with municipal zoning ordinances, was provided, and indeed contemplated, by Ill. Rev. Stat. 1967, ch. 34, par. 3151, as amended in 1965. (See *Village of Mount Prospect v. County of Cook*, 113 Ill.App.2d 336, 341, 252 N.E.2d 106.) A comprehensive zoning plan is a scheme or formula of zoning that reasonably relates the regulation and restriction of land uses, including establishment of districts therefor, to the health, safety and welfare of the public, and thus to the police power. (*Hadley v. Harold Realty Co.* (1964), 97 R.I. 403, 408, 198 A.2d 149.) It is a plan relevant in determining whether a zoning change is in harmony with the orderly utilization of property in a locality. See *Fifteen Fifty North State Building Corp. v. City of Chicago*, 15 Ill. 2d 408, 418-19, 155 N.E.2d 97; compare *Sinclair Pipe Line Co. v. Village of Richton Park*, 19 Ill.2d 370, 167 N.E.2d 406.

A zoning ordinance is presumed to be valid. (See *Exchange National Bank v. County of Cook*, 25 Ill.2d 434, 185 N.E.2d 250; *Central National Bank v. Village of Hoffman Estates*, 10 Ill.App.3d 177, 293 N.E.2d 481.) "It is presumed that the legislative body investigated and found conditions such that the legislation which it enacted was appropriate, and that it acted wisely and with full knowledge of the conditions, that it intended a reasonable and legal classification and had sufficient reason to make the classification that it made * * * and that the regulation is in the interest of the community as a whole." *W. L. Holcomb, Inc. v. City of Clarksdale* (1953), 217 Miss. 892, 900, 65 So.2d 281, 284; 62 C.J.S. Municipal Corporations § 228; 1 Rathkopf, The Law of Zoning and Planning, 21—1, 21—2 (3d ed. 1972).

Plaintiffs and the intervenor do not contend that lack of a comprehensive plan, whether mandated by statute or not, invalidates an ordinance adopted by the Board of County Commissioners of Cook County. Rather, they contend that lack of a comprehensive plan "* * * weaken[s] substantially the well known presumption which, ordinarily, attends any regular-on-its-face municipal zoning ordinance or amendment thereof. This is particularly true of an ordinance proposed toward contradictory rezoning, after years of original zoning upon which concerned persons have come to depend." *Raabe v. City of Walker* (1970), 383 Mich. 165, 178, 174 N.W.2d 789; see *Village of Euclid v. Ambler Realty Co.* (1926), 272 U.S. 365, 71 L.Ed. 303, 47 S.Ct. 114.

We observe that when application was made to rezone the 96-acre tract, Cook County had a highway department and a department of planning and development. In addition, the county had available the informational resources of the Metropolitan Sanitary District concerning capacity of its sewerage systems and how these would be affected by the construction of 2003 additional dwelling units in the area where the

tract of land was located. However, proponents of the zoning change could not show that the county's highway department played any part in considering the effect which the population increase from 600 to 6000 persons would have on the roads and highways near the developed tract. The county's department of planning and development had no part in considering the application for rezoning, its effect on neighboring property or the consequences of the contemplated increase in population density. And it was readily admitted by defendants that Cook County did not have a comprehensive zoning plan.[5] This admission has to be weighed against the enabling statute which provides that all county zoning shall be "[f]or the purpose of * * * conserving the values of property throughout the county * * * [and] due allowance shall be made for existing conditions, the conservation of property values, the directions of building development to the best advantage of the entire county, and the uses to which the property is devoted at the time of the enactment of any such ordinance or resolution." Ill. Rev. Stat. 1967, ch. 34, par. 3151.

■■ Moreover, without objection from any defendant, plaintiffs offered and had received in evidence the complete file of the proceedings before the Zoning Board of Appeals. Under proper objections, the file of the Zoning Board was not admissible in evidence. (See *Anthony v. City of Kewanee*, 79 Ill.App.2d 243, 223 N.E.2d 738; *Siegel v. City of Chicago*, 127 Ill.App.2d 84, 261 N.E.2d 802.) However, the file was admitted in evidence, and its contents are relevant to the issue we consider. These show that when the Zoning Board heard the rezoning application and the request for the special use, it did not hear from any county agency concerned with land use or planning or from any county agency with an interest in the increased population that was going to result from the multiple-family development contemplated by the rezoning application.

■■ The presumption of validity which plaintiffs and the intervenor contend is weakened or destroyed by Cook County's lack of a comprehensive zoning plan, and by its failure to correlate rezoning decisions with the resources of other county agencies, is a rebuttable presumption. (See *People ex rel. Keller v. Village of Oak Park*, 266 Ill. 365, 107 N.E. 636; *Behnke v. President and Board of Trustees*, 366 Ill. 516, 9 N.E.2d

---

[5] Although a township has no authority to zone its land uses (see *Town of Bloomington v. Murphy*, 73 Ill.App.2d 417, 218 N.E.2d 817), the evidence in this case discloses that Northfield Township, in 1970, developed a comprehensive plan which was submitted to the Cook County Board of Commissioners for its approval. It appears, however, that no consideration was given the plan in connection with rezoning of the subject property.

232; 101 C.J.S. Zoning §§ 362, 363.) This presumption may be strengthened or weakened by evidence. (See *Steiner v. Rig-A-Jig Toy Co.*, 10 Ill. App.2d 410, 135 N.E.2d 166; *East St. Louis Connecting Ry. Co. v. Altgen*, 210 Ill. 213, 71 N.E. 377; 1 Callaghan's Illinois Evidence § 3.14.) It is dissipated or destroyed by evidence which proves the contrary. (*La Salle National Bank v. County of Cook*, 12 Ill.2d 40, 145 N.E.2d 65; *Illinois National Bank & Trust Co. v. County of Winnebago*, 19 Ill.2d 487, 167 N.E.2d 401; *Pioneer Trust & Savings Bank v. County of McHenry*, 41 Ill.2d 77, 241 N.E.2d 454.) "Zoning necessarily involves a consideration of the community as a whole and a comprehensive view of its needs." (*City of Aurora v. Burns*, 319 Ill. 84, 95, 149 N.E. 784; 1 Rathkopf, The Law of Zoning and Planning 9—1 (3d ed. 1972); Haar, *In Accordance with a Comprehensive Plan*, 68 Harv. L. Rev. 1154, 1170 (1955).) This being so, we are constrained to agree that the failure of Cook County to plan comprehensively for the use and development of land in its unincorporated areas, and its failure to relate its rezoning decisions to data files and plans of other related county agencies, weaken the presumption of validity which otherwise would attach to a county zoning ordinance. Compare *Udell v. Haas* (1968), 21 N.Y.2d 463, 235 N.E.2d 897; see Annot., 40 A.L.R.3d 372.

With this fact in mind, we turn to the last issue in this appeal. Whether, measured by applicable standards of reasonableness, the decision of the Board of Commissioners of Cook County to rezone the 96-acre tract was an arbitrary and capricious exercise of its power to regulate the use and development of land within its jurisdiction. This issue, as presented and argued before us, requires that we determine the validity of the amendatory zoning ordinance and the propriety of the special use that authorized construction of a multiple-family development on a tract of land that, consistent with neighboring residential uses, was zoned for single-family homes. In doing so, we apply principles of zoning law which on numerous occasions have been announced by reviewing courts of this state.

■■ The rezoning decision of the Board of County Commissioners was primarily a legislative function with which we will not interfere in the absence of a clear showing that it was unreasonable or capricious. (*Exchange National Bank v. Cook County*, 25 Ill.2d 434, 440, 185 N.E.2d 250.) The burden of making such a showing was on plaintiffs and the intervenor who, in addition, had to show that the rezoning was not substantially related to the public health, safety and welfare of the community in which the land was located. See *First National Bank v. Village of Morton Grove*, 12 Ill.App.3d 589, 299 N.E.2d 570.

■■ In determining the validity of an amendatory ordinance, the factors

to be considered are the same as those involved in ascertaining the legality of the initial ordinance, namely, (1) the existing uses and zoning of nearby property, (2) the extent property values are affected by the particular classification, (3) the promotion of the public welfare, (4) the relative gain to the public as compared to the hardship imposed on the property owner, and (5) the suitability of the property for the purpose zoned. (*Chicago Title & Trust Co. v. Village of Wilmette*, 27 Ill.2d 116, 188 N.E.2d 33; *Liberty National Bank v. City of Chicago*, 10 Ill.2d 137, 139 N.E.2d 235.) Each zoning case must be determined on its own facts. (Kioutas v. City of Chicago, 59 Ill.App.2d 441, 208 N.E.2d 587.) But of paramount importance is the question "* * * whether the subject property is zoned in conformity with surrounding existing uses and whether those uses are uniform and established." *Jacobson v. City of Evanston*, 10 Ill.2d 61, 70, 139 N.E.2d 205; *Oak Park National Bank v. City of Chicago*, 10 Ill.App.3d 258, 294 N.E.2d 42.

For many years prior to the rezoning, the subject property, with the exception of a stable under construction on Lake-Cook Road, was surrounded by single-family homes. One side of the tract, its western edge, had forest preserve land that was zoned R-3, a single-family residence district. The surrounding uses for single-family residences were uniform and established. The nearest multiple-family housing was a distance south of the 96-acre tract and on the other side of the Tri-State Tollway, a natural buffer between land on which were multiple-family residences and that reserved for single-family homes. All indications are that consistent with the normal and ordinary growth of that unincorporated part of the county, the tract should be developed with single-family homes. It appears, then, that the Board of Commissioners rezoned the tract of land inconsistent with existing uses and the zoning of nearby property.

Prior to this rezoning, the tract, under the county zoning code, was in the R-3 district, a classification that restricted its use to single-family homes. The homes on land that abutted the tract ranged in present value from $25,000 to $75,000. The tract itself, although purchased in 1968 for $1,200,000, had a value, at the time of trial, of $1,500,000 zoned R-3 and $3,000,000 zoned R-6. In fact, by the time this case was heard, the defendant Thomas Origer had a contract to sell the land, as rezoned, for $3,440,000. Therefore, the value of the tract increased under the old zoning but tripled under the new.

On the other hand, evidence introduced by plaintiffs and the intervenor proved that construction of multiple-family buildings on the tract will depreciate the single-family homes near it, in a range of from 5 to 10 percent of their real estate value. It is true that an expert who testified for defendants gave his opinion that multiple-family buildings nearby

will not cause any economic obsolescence to neighboring property. In any event, before entry of the decree, the trial judge found that the planned multiple-family development would have "some depreciatory effect" on homes along the southern border of the tract; and "* * * in a general way that the homes are not particularly benefited by the construction of this planned development." Therefore, the evidence proved, without question, that while the value of the tract was not adversely affected by the old zoning but greatly benefited by the new, the property values of homes nearby could be adversely affected by the particular classification into which the tract was put by the amendatory zoning ordinance.

Under its original classification, R-3, if the 96-acre tract were developed with single-family homes, there would be a population increase of about 600 persons. The multiple-family development contemplated by the rezoning, and permitted by the special use, would result in 2,003 housing units and generate a population increase between 4,000 and 6,000 people. This increase will require 2,982 parking spaces for automobiles owned by persons who will live in the development. According to an expert who testified for the plaintiffs, these automobiles will generate 20,000 vehicular trips per day to be absorbed by the 2 roads that border the tract. The same expert, basing his testimony on traffic counts and surveys, told the trial court that the increase of vehicular traffic into one of these roads, Forestview Drive, will approximate 400 cars in the morning peak hour compared to the 18 to 22 vehicles which then used the same road. On the other road, Sanders, according to the expert, traffic will be increased four times by the multiple family development.

In contrast with this testimony, an expert who testified for defendants, one who did not make a traffic count or survey, projected the increased use which the development will generate and gave his opinion that the two roads were adequate to deal with it because, he said, "[i]nitially the traffic would take the path of least resistance to each of the two facilities, Sanders and Forestview. It would then distribute itself in the path of least resistance again * * *." This testimony did not, and indeed could not, contradict plaintiffs' evidence that the multiple family development was going to bring more automobiles into the roads in question. This being so, we bear in mind that one of the important purposes of zoning is the alleviation of traffic congestion. (*Jarvis Acres, Inc. v. Zoning Commission* (1972), 163 Conn. 41, 301 A.2d 244; *Temmink v. Board of Zoning Appeals* (1957), 212 Md. 6, 128 A.2d 256.) In fact, it is a statutory mandate that zoning in the county unincorporated areas have, as one of its purposes, the "* * * lessening or avoiding congestion in the public streets and highways * * *." (Ill. Rev. Stat. 1967, ch. 34,

par. 3151.) In conflict with this mandate, it is clear that the rezoning in this case did not lessen or avoid congestion in the streets and highways involved.

Moreover, there was photographic and testimonial evidence, none of it contradicted, that the tract water table was so high that even a retention pond that was to be built on the development would not protect the front yards of nearby homes from being flooded occasionally by heavy rainfall. There was undisputed evidence that the multiple-family development will produce approximately 500 school-age children who will attend elementary schools in 2 nearby districts. Officers from one testified, without contradiction, that its three elementary schools, including the one that would serve some of the children from the development, were overcrowded; and the district did not have bonding power sufficient to finance construction of additional facilities. The cost of a new school for grades from kindergarten to the sixth was between $900,000 and $1,300,000. He told the trial court that the district could not "* * * possibly expect to have money available to build another school within at least two years."

Defendants, however, met this evidence with the testimony of an expert who analysed the real estate taxes which the multiple-family development will produce for the school districts affected. From his computations, which he revised at least once, he estimated that after the cost of educating the additional children were deducted from the contemplated real estate tax revenues, there would be an annual surplus in excess of $863,000. We think it obvious that these computations are dubious, to say the least. But even were they absolutely correct, we know that the educational needs of a child will not await the collection of real estate taxes. A child's impact on available public school facilities occurs when he is moved into the community, not when the real estate on which he lives is taxed.

Furthermore, we know that the influx of 4,000 to 6,000 people into a community will require, in the public good, zoning considerations that contemplate more roadway and highway facilities, additional public schools, expanded public utilities and extended fire and police protection. It is for this reason that county authorities are told their zoning decisions must be "[f]or the purpose of promoting the public health, safety, morals, comfort and general welfare, conserving the values of property throughout the county * * *." (Ill. Rev. Stat. 1967, ch. 34, par. 3151.) In our judgment, the amendatory zoning ordinance adopted in this case by the Board of Commissioners of Cook County did not promote this purpose.

■■■ This is not a case, then, in which a zoning classification resulted

in a relative gain to the public and hardship to a property owner. As shown by a bare statement of the facts, the rezoning and special use were proposed by the owner of the tract. The proposals were opposed by neighboring municipalities, the owners of abutting land and the owners of homes that were going to be adversely affected by the zoning change. These owners had the right to rely on the rule that a zoning classification will not be changed except for the public good. (See *Northern Trust Co. v. City of Chicago,* 4 Ill.2d 432, 123 N.E.2d 330; *Central National Bank v. Village of Hoffman Estates,* 10 Ill.App.3d 177, 293 N.E.2d 481.) They had the right to insist that the land use under the proposed rezoning be reasonable. (*Sulzberger v. County of Peoria,* 29 Ill.2d 532, 194 N.E.2d 287.) In a zoning context, use of land is reasonable when it is consistent with the public health, safety, morals and welfare. A change in zoning cannot be justified by the desires of certain individuals; it *is* justified only because the public welfare requires it. *Wesemann v. Village of LaGrange Park,* 407 Ill.81, 89, 94 N.E.2d 904.

■■ Therefore, we conclude that measured by applicable standards of reasonableness, the decision of the Board of Commissioners of Cook County to rezone the 96-acre tract and grant the special use was an arbitrary and capricious exercise of its power to regulate the use and development of land within its jurisdiction. Public interest did not require rezoning of the tract from R-3, a single family, to R-6, a multiple-family use. The judgment is reversed and the cause is remanded with directions that the trial court grant the relief prayed by plaintiffs and the intervenor. *Treadway v. City of Rockford,* 28 Ill.2d 370, 192 N.E.2d 351; *Garner v. City of Carmi,* 28 Ill.2d 560, 192 N.E.2d 816.

Reversed and remanded with directions.

HAYES, P. J., and DOWNING, J., concur.