THE VILLAGE OF BARRINGTON HILLS *et al.*, Plaintiffs-Appellants, *v.* THE VILLAGE OF HOFFMAN ESTATES *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 78-1944

Opinion filed August 21, 1979.

Friedman & Koven, of Chicago (Donald J. Kreger and Robert J. Rubin, of counsel), for appellant Village of South Barrington.

Ross, Hardies, O'Keefe, Babcock & Parsons, of Chicago (R. Marlin Smith and Robert M. Sacoff, of counsel), for appellant Village of Barrington Hills.

Richard N. Williams, of Hoffman Estates, for appellee Village of Hoffman Estates.

Wexler and Shaw, Ltd., and Klafter, Burke, Keane & Nathan, both of Chicago (Richard L. Wexler, Stuart Smith, and Edward M. Burke, of counsel), for other appellees.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Does one municipality have standing to challenge the zoning decision of another municipality? That is the sole issue in this appeal. Plaintiffs, the Village of Barrington Hills (Barrington Hills) and the Village of South Barrington (South Barrington), appeal an order of the circuit court of Cook County dismissing their complaint against defendants, the Village of Hoffman Estates (Hoffman Estates); Nederlander Realty Company of Illinois, Performance Properties, Inc., Ned-Prop, RKO General, Inc. (the Nederlander Group); Pioneer Bank and Trust Company; and Fred and Ethel Hansen. The facts alleged in the plaintiffs' complaint follow.

The Nederlander Group, related corporate entities and joint venturers, plans to construct an outdoor, open-air music theater on 212 acres of land located in Barrington Township in close proximity[1] to Barrington Hills, a non-home-rule municipality, and South Barrington, a home-rule municipality. Pioneer Bank and Trust Company holds legal title to the property in trust for Fred and Ethel Hansen, the beneficial owners of the property. The theater will seat approximately 20,000 people: 6,000 in an auditorium and 14,000 in the surrounding area. Parking spaces will be provided for 6,000 to 7,500 cars, and concessions and other commercial activities will be conducted ancillary to the theater's performances and electronically amplified music programs.

---

[1] The subject property is located in parts of the west ½ of section 33 and the east ½ of section 32 of Barrington Township. It is bound by the Northwest Tollway on the south, the Elgin, Joliet & Eastern Railway on the west, Higgins Road on the north, and New Sutton Road on the east. Neither plaintiff village adjoins or is contiguous to the subject property. A point of the Village of Barrington Hills is north of and across Higgins Road. The Village of South Barrington is approximately ¼ mile from the subject property.

On August 22, 1978, Hoffman Estates passed three ordinances pertaining to the subject property: Ordinance No. 1039-1978 authorized an annexation agreement; Ordinance No. 1040-1978 annexed the subject property to Hoffman Estates; and Ordinance No. 1041-1978 rezoned part of the subject property to B-2 Business District and part to "F" Farming District to permit the construction and operation of the theater. Prior to the adoption of these ordinances, the subject property had been located in an unincorporated area of Cook County and classified in the R-1 Single Family Residence District under the Cook County zoning ordinance. Both Barrington Hills and South Barrington by ordinance adopted a comprehensive plan restricting the use of land in the vicinity of the subject property to single-family residences at low densities and to rural uses.

The plaintiffs' six-count complaint further alleges that the defendants' adoption of the zoning ordinances and the construction and operation of the theater illegally and unconstitutionally create a public nuisance not permitted by Hoffman Estates' B-2 Business District zoning. In general plaintiffs assert that the construction and operation of the theater will be inconsistent with the character and trend of development of the area, and will inflict specific and distinct injury upon them. The alleged prospective special damages which allegedly will impair the health, safety, and general welfare of the plaintiffs' residents include (1) safety hazards due to traffic congestion, (2) the need for additional traffic police at an annual cost to Barrington Hills of at least $42,000 and to South Barrington of $24,000, (3) the cost of clearing litter and debris deposited by crowds en route to and from the theater on the plaintiffs' roads, (4) the cost of additional police squad cars and the diversion of its existing police force to monitor theater crowds and traffic, (5) the degradation of ambient air quality due to vehicular traffic exhaust emissions, (6) substantial increases in sound levels during performances and traffic flows, and (7) decreased municipal revenues from *ad valorem* real property taxes as a result of diminished property values in the vicinity of the theater.

The defendants' motion to dismiss the plaintiffs' complaint asserts, *inter alia*, that neither of the plaintiffs is contiguous to or provides services to the subject property, and that none of the facts alleged show special damages establishing that the plaintiffs are aggrieved parties having standing to litigate Hoffman Estates' zoning of the subject property. The trial court granted the defendants' motion, and the plaintiffs appeal.

## I.

The threshold question is when does a municipality become an aggrieved person with standing to challenge a zoning decision of another

municipality. In a number of cases this court has held that in the absence of express or implied statutory authority, a municipal corporation lacked standing to challenge the zoning of land located outside its borders in unincorporated areas of Cook County. See *Village of Bensenville v. County of Du Page* (1961), 30 Ill. App. 2d 324, 174 N.E.2d 403 (abstract); *Village of Mount Prospect v. County of Cook* (1969), 113 Ill. App. 2d 336, 252 N.E.2d 106; *Krembs v. County of Cook* (1970), 121 Ill. App. 2d 148, 257 N.E.2d 120; *Village of Arlington Heights v. County of Cook* (1971), 133 Ill. App. 2d 673, 273 N.E.2d 706; *Village of Arlington Heights v. Cook County* (1971), 3 Ill. App. 3d 213, 278 N.E.2d 841.

However, in *Forestview Homeowners Association v. County of Cook* (1974), 18 Ill. App. 3d 230, 309 N.E.2d 763, *appeal denied* (1974), 56 Ill. 2d 582, we upheld the Village of Northbrook's permissive intervention in a suit challenging the county's rezoning of property located approximately one and one-half miles from Northbrook's corporate limits. We held that article VII, section 6(a) of the Illinois Constitution of 1970 (Ill. Const. 1970, art. VII, §6(a)) by which the Village of Northbrook became a home-rule unit provided the constitutional authority to exercise any power and perform any function pertaining to its government and affairs. We held that when a municipality engages in litigation to enforce the public policy manifested by its ordinances, it is engaged in a governmental function.

■■ The specific issue of a municipal corporation's standing to institute an action to challenge a zoning decision of an adjoining municipality was considered by our supreme court in *Hickory Hills v. Bridgeview* (1977), 67 Ill. 2d 399, 367 N.E.2d 1305. Following reference to the foregoing cases, the court stated:

> "From an examination of the authorities (see Annot., 49 A.L.R.3d 1126 (1973), and cases there collected) it would appear that the general rule that 'an aggrieved person' with a real interest in the subject matter of the controversy may challenge a zoning ordinance is applicable to municipal corporations." (*Hickory Hills*, 67 Ill. 2d 399, 403.)

The supreme court then held that as Hickory Hills was required to supply sewer and water facilities to the area involved, it was an aggrieved person with a real interest in the controversy. Thus, despite the absence of statutory authority, a municipal corporation may challenge the zoning decision of another municipal corporation, if such a municipality is found to be "an aggrieved person" with a real interest in the subject matter. *Hickory Hills*; see also *City of West Chicago v. County of Du Page* (1979), 67 Ill. App. 3d 924, 926, 385 N.E.2d 826.

■■ As between property owners and municipalities or counties, it is well recognized that in order to establish standing to challenge a zoning

decision determining the use to which another's property may be put, an individual property owner must prove that he has suffered a special damage by reason of such use which differs from that suffered by the general public. (*Treadway v. City of Rockford* (1963), 28 Ill. 2d 370, 376, 192 N.E.2d 351; *Garner v. County of Du Page* (1956), 8 Ill. 2d 155, 158-59, 133 N.E.2d 303; *Whittingham v. Village of Woodridge* (1969), 111 Ill. App. 2d 147, 150, 249 N.E.2d 332.) Considering the meaning of the requirement that to have standing a plaintiff must be a person "interested in the controversy," the supreme court in *Underground Contractors v. Chicago* (1977), 66 Ill. 2d 371, 362 N.E.2d 298, observed:

> "The word, 'interested' does not mean merely having a curiosity about or a concern for the outcome of the controversy. Rather, the party seeking relief must possess a personal claim, status, or right which is capable of being affected. [Citation.] The dispute must, therefore, touch the legal relations of parties who stand in a position adverse to one another." *Underground Contractors*, 66 Ill. 2d 371, 376.

In *Forestview* and in *City of West Chicago*, the plaintiffs' suits challenged zoning decisions made by county zoning boards affecting properties located in unincorporated areas of those counties but within 1½ miles of the municipalities' boundaries. In *Forestview*, we gleaned from the language of article VII, section 6(c) of the Illinois Constitution (Ill. Const. 1970, art. VII, §6(c)) an intent to grant priority to municipalities over counties in matters of local concern (see *Forestview*, 18 Ill. App. 3d 230, 238 n. 3). We are of the opinion that such a priority and concern for municipality-county relations may also be ascertained from several statutes. For example, section 1 of "An Act in relation to county zoning" (Ill. Rev. Stat. 1977, ch. 34, par. 3151) provides in part that:

> "Nothing in this Act shall be construed to restrict the powers granted by statute to cities, villages and incorporated towns as to territory contiguous to but outside of the limits of such cities, villages and incorporated towns. Any zoning ordinance enacted by a city, village or incorporated town shall supersede, with respect to territory within the corporate limits of the municipality, any county zoning plan otherwise applicable." (Ill. Rev. Stat. 1977, ch. 34, par. 3151.)

Moreover, section 2 of that Act requires a three-fourths vote rather than a simple majority vote of a county board zoning land lying within 1½ miles of the nearest adjacent municipality if that municipality has a zoning ordinance and has protested the proposed zoning. Ill. Rev. Stat. 1977, ch. 34, par. 3152.

Relying on section 2, the plaintiff in *City of West Chicago* sought to declare the invalidity of the county's ordinance passed by a simple

majority vote which granted a special use permit to locate offices, a garage, and other facilities on property zoned under the county's R-2 zoning ordinance and located within 1½ miles of the city. Although finding section 2 inapplicable, the court concluded that the city had standing to challenge the decision based on its allegations that the property had been classified in the city's master plan. The court concluded therefore that the city was an aggrieved party with a stake in the outcome of the controversy. Relying on *Hickory Hills*, the court found that West Chicago had the capacity to litigate the validity of county zoning ordinances even absent an explicit statutory authorization to do so.

We note that section 11—12—11 of the Municipal Code provides that if a municipality has adopted an official plan or map, the territory subject to that plan is exempt from the application of any less restrictive rules or regulations adopted by a county zoning ordinance. (Ill. Rev. Stat. 1977, ch. 24, par. 11—12—11.) We are of the opinion that section 11—12—11's recognition of the priority of municipalities over counties in such circumstances supports the court's finding that the City of West Chicago had standing to litigate the county's zoning decision. See also *Ruegg v. Board of County Commissioners* (1978), 32 Ore. App. 77, ___, 573 P. 2d 740, 742.

The rationale for the priority of municipalities over counties in matters of local concern becomes apparent, when, as in *Forestview*, it is also recognized that many of the unincorporated areas of a county become annexed to existing municipalities. In that case, the possibility that Northbrook would annex the subject property and therefore would be required to provide it with highways, public water supplies, storm sewers, sanitary sewers and drainage created the duty to concern itself with the development of the practically adjoining property, and conferred standing on the Village of Northbrook to intervene. See *Forestview*, 18 Ill. App. 3d 230, 238 n. 4.

In the instant case the Village of Hoffman Estates has annexed the subject property and therefore has the statutory right to exercise all zoning and regulatory powers over it. (See Ill. Rev. Stat. 1977, ch. 24, par. 11—13—1.) The plaintiffs do not challenge the annexation. Other than the aforementioned statutory authority which grants to an annexing municipality the right to exercise all zoning and regulatory powers over the annexed area even though it had previously been zoned by another municipality, we have found neither constitutional nor statutory authority from which we may glean an intent to establish any priorities between contiguous municipalities.

■■ In the development of suburban areas, with municipalities adjoining and contiguous one to another, the boundary lines must start and stop at

some point. The rights and powers of each municipality must be paramount and superior to adjoining municipalities. Otherwise the mischievous activities of one municipality could hold in hostage the governmental functions of another municipality. To this general rule is the delimited exception set forth in *Hickory Hills* for those circumstances in which an aggrieved municipality is also able to establish that it has a real interest in the subject matter of the litigation.[2] Even taking as true the well-pleaded allegations of the plaintiffs' complaint, as we must for purposes of the defendants' motion to dismiss (see *Brown v. County of Lake* (1966), 67 Ill. App. 2d 144, 152, 213 N.E.2d 790), we do not find the plaintiffs' allegations sufficient to fall within this exception.

In *Hickory Hills*, the plaintiff and defendant municipalities had been involved in prior litigation which resulted in a court order requiring the plaintiff to supply sewer and water facilities to an area located within the Village of Bridgeview. Thereafter Bridgeview passed two rezoning ordinances, one of which approved use of a portion of the involved area as a planned unit development. The plaintiff municipality, as well as a number of individual plaintiffs, sought to declare the invalidity of the ordinance and to permanently enjoin the proposed planned use development. They alleged, *inter alia*, that the water supply, sewer, and street systems of the plaintiff were inadequate to serve the proposed development, and that it "would create a serious hazard to all of the plaintiffs herein and their property and would destroy the economic value and be detrimental to and would endanger the public health, safety, morals, comfort and general welfare of the area." (*Hickory Hills*, 67 Ill. 2d 399, 401.) The trial court dismissed the complaint on the ground that the earlier judgment barred the plaintiffs' action and the appellate court affirmed. On appeal to the supreme court, the plaintiff municipality contended that the question of its legal right, "as an aggrieved party, showing a demonstratively unique impact and effect on its proprietary functions, to challenge the zoning of a contiguous municipality" had not been adjudicated in the prior litigation. (*Hickory Hills*, 67 Ill. 2d 399, 402.) The supreme court agreed, finding that, while the earlier case had decided which of the two municipalities had jurisdiction over the area and that the plaintiff had a duty to provide the services, "the question here involved is the validity of the ordinance and its effect upon the plaintiff's continued obligation to make sewer and water services available." (*Hickory Hills*.) Considering the question of plaintiff's standing

---

[2] Although we note that a number of individual plaintiffs joined in the suit in *Hickory Hills*, no individual property owners are joined in the present suit. Thus, our remarks do not apply to the rights of individual property owners who allege special damages by virtue of the action of an adjoining municipality.

for the first time, the supreme court held that a municipal corporation may be an aggrieved person, and then concluded that:

"[I]n view of the prior litigation, and the order which requires plaintiff to supply sewer and water facilities to the area involved, *plaintiff is an aggrieved person with a real interest* in the subject matter of this controversy." (Emphasis added.) *Hickory Hills*, 67 Ill. 2d 399, 403.

In the instant case, we can understand that the plaintiffs may in some way be unhappy by the rezoning and development of the subject property. However, on the basis of *Hickory Hills*, we are of the opinion that it was incumbent upon the plaintiffs to also allege facts, such as those in *Hickory Hills*, establishing that they had a real interest in the controversy. Although, as here, the plaintiffs in *Hickory Hills* alleged that the proposed development would adversely affect their street systems, and the economic value of their property, the supreme court did not consider these allegations, but as we read the case, focused solely upon the question of the ordinance's impact on Hickory Hills' continued obligation and ability to provide sewer and water services. Unlike the effect on its street systems and property values which would likewise be felt by other neighboring municipalities, Hickory Hills' responsibility of providing water and sewer services to the area placed Hickory Hills in a position in which the ordinance approving the proposed planned unit development would have a "demonstratively unique impact and effect on its proprietary functions" unlike that of other municipalities, and thus gave it a real interest in the subject matter of the controversy.

█ The plaintiffs' complaint in the instant case does not allege, and, as is apparent from the defendants' agreement entered into as part of the annexation to provide all services to the subject property, cannot allege that they have been or will in the future be required to supply water or sewer facilities, or for that matter any services directly to the subject property. Under these circumstances, we are of the opinion that the trial court properly found that the plaintiffs lacked standing to litigate the validity of the ordinance. Accordingly, the trial court's order dismissing the plaintiffs' complaint must be affirmed.

Affirmed.

STAMOS, P. J., and PERLIN, J., concur.