(No. 37422.—

The Cosmopolitan National Bank of Chicago, Trustee, *et al.,* Appellees, *vs.* The City of Chicago, Appellant.

*Opinion filed March 25, 1963.—Rehearing denied May 29, 1963.*

JOHN C. MELANIPHY, Corporation Counsel, of Chicago, (SYDNEY R. DREBIN and MARSILE J. HUGHES, Assistant Corporation Counsel, of counsel,) for appellant.

JACOB SHAMBERG, and WISCH AND CRANE, both of Chicago, for appellees.

Mr. JUSTICE DAILY delivered the opinion of the court:

This appeal, duly certified to us by the trial court, is taken from a decree of the circuit court of Cook County which held that an amendatory zoning ordinance passed by the city of Chicago was void in its entirety and ordered it set aside as a cloud on the title to premises owned by the plaintiffs. In addition, the decree found that the zoning classification sought to be imposed by the amendatory ordinance was unconstitutional as applied to plaintiffs' property and permanently enjoined the city from enforcing such ordinance or any subsequent ordinance which would prohibit the use of plaintiffs' property for a funeral parlor.

The property in question is a vacant parcel situated at the northwest corner of the intersection of North California Avenue and West Pratt Avenue in the city of Chicago. Legal title is in the plaintiff Cosmopolitan National Bank of Chicago, as trustee, while the beneficial owner is

the co-plaintiff, Hartman-Miller, Inc., a corporation which has been operating an undertaking establishment for many years at another location and which proposes to move its business to the subject property. Plaintiffs acquired the greater portion of their parcel by a deed which was recorded May 2, 1957, the zoning then being B4-1, a business classification that permitted use for an undertaking establishment. On the date of purchase, and since late in 1955, the city council had under consideration a comprehensive amendatory zoning ordinance by the terms of which, as matters stood on May 2, 1957, it was proposed to continue the B4-1 classification of the parcel. Approximately three weeks later, on May 29, 1957, the comprehensive amendatory ordinance passed and the B4-1 classification of the property was retained. Subsequently, on July 2, 1958, plaintiffs acquired the balance of their parcel, a 50-foot strip, and it also was under the B4-1 classification.

On March 26, 1958, which was prior to plaintiffs' purchase of the 50-foot strip and less than a year after the comprehensive amendatory ordinance was passed, an alderman acting upon the request of a group styled as the Deer Park Civic Association initiated an amendatory ordinance proposing to rezone all of plaintiffs' land to B2-1, a business classification which did not permit use as a funeral parlor. At the time the city's zoning ordinance required hearing and notice of hearing on amendments before the zoning committee of the city council, while section 11.9—7 provided in part: "If an application for a proposed amendment is not acted upon finally by the City Council within six (6) months of the day upon which said application is filed by the City Clerk with the City Council it shall be deemed to have been denied." The amendatory ordinance which is the source of this proceeding was passed on November 25, 1958, approximately eight months after it had been filed, and it appears that there was neither notice nor hearing by the zoning committee as required.

Thereafter, plaintiffs initiated this action in equity to remove the amendatory ordinance of November, 1958, as a cloud on their title, alleging it was void and of no effect for failure of the city to comply with the enactment process, and also prayed for injunctive relief on the ground that the B2-1 classification was unconstitutional as applied to their property. As previously noted, both of these issues were determined for the plaintiffs. And while it could be said that the issue as to the constitutionality of the B2-1 classification became moot once it had been determined that the 1958 amendment was void and of no effect for deficiences in the enactment process, we believe under the circumstances that the chancellor was justified in employing the broad powers of equity to resolve the second issue. Otherwise the city would only have had to pass another amendatory ordinance with the B2-1 classification, thus subjecting plaintiffs and our courts alike to a second round of costly and time consuming litigation.

In seeking reversal the city contends that the trial court had no jurisdiction in the cause, first, because plaintiffs failed to exhaust the local remedies available to them under the Chicago zoning ordinance, *i.e.* an application for amendment as outlined in *Reilly* v. *City of Chicago,* 24 Ill.2d 348, and *Brader* v. *City of Chicago,* 26 Ill.2d 152, and second, because plaintiffs failed to comply with the provisions of subsections (d) and (e) of section 73—4 of the Revised Cities and Villages Act requiring written notices to be served upon surrounding property owners prior to the commencement of a *declaratory judgment* proceeding to challenge the validity of a zoning ordinance. Ill. Rev. Stat. 1959, chap. 24, par. 73—4(d) and (e).

Neither of the contentions advanced have merit. Indeed, the latter was recently resolved against the city in *Kupsik* v. *City of Chicago,* 25 Ill.2d 595, in which we held that where, as here, relief against a zoning ordinance is sought in equity by a bill to remove a cloud on title and

for injunctive relief, the written notice provisions of section 73—4(d) and (e) do not apply. In *Kupsik* the city took the position that declaratory judgment procedure had become the exclusive remedy by which the validity of a zoning ordinance could be attacked, thus making compliance with the notice provisions of section 73—4(d) and (e) a condition precedent to the court's jurisdiction. Having failed in that contention it now takes the tack that declaratory judgment procedure is no more than a modern counterpart of the old equity proceeding to remove a cloud on title and that, whichever remedy is employed, the notice provisions must be complied with. We do not depart, however, from our holdings in *Kupsik* that the two remedies are separate and independent of the other, and that the conditions laid down for the use of declaratory judgment procedure do not control or apply to the use of the equitable remedy of an action to remove a cloud upon title. Further, when we consider the fact that an action to remove a cloud on title has never been abolished as a remedy for attacking a zoning ordinance, we may not, under basic principles of statutory construction, read into section 73—4 a legislative intent that the notice provisions are to apply when such equitable remedy is pursued.

Nor was it necessary in this case for plaintiffs to have exhausted their local remedies by applying to the city council for a further amendment, or, as the city suggests, by calling the invalidity of the 1958 amendment to the attention of city council. As noted in *Bank of Lyons* v. *County of Cook,* 13 Ill.2d 493, the rule as to exhaustion of remedies in zoning cases has application only where it is alleged that a zoning ordinance, otherwise conceded to be valid, is invalid in its application to a particular property. Here, plaintiffs' action was fundamentally one to have the entire amendatory ordinance of 1958 declared void and removed as a cloud on title. And while, as a practical matter, the further prayer for injunctive relief may be

said to have put into issue the validity or invalidity of the B2-1 classification as applied to plaintiffs' property, there was still no need to apply for the local remedy of amendment in this case.

We conclude that the trial court did have jurisdiction of the cause and that this was a case in which the judicial policy of requiring the exhaustion of local remedies was properly waived.

The city's next contention, *viz.,* that the 1958 amendatory ordinance was not void, is equally untenable. While it is insisted that the provisions of section 11.9—7 requiring passage within six months from filing applies only in those cases where an application for amendment is filed by a property owner, as distinguished from a council member, the ordinance does not make this distinction. Rather, it is the purport of section 11.9—3 that applications of both character stand on equal footing for purpose of processing once they are received by the city clerk. Nor is the city aided by its argument that the legislative acts enabling the city to pass ordinances in general, and zoning ordinances in particular, have no requirement that an ordinance must be enacted within six months of filing. Section 23—106 of the Revised Cities and Villages Act granted to cities the power "To pass all ordinances and make all rules and regulations, proper or necessary, to carry into effect the powers granted to such municipalities," (Ill. Rev. Stat. 1959, chap. 24, par. 23—106,) and, in this case, it was the city itself, undoubtedly for the purpose insuring a prompt and orderly administration of its power to pass zoning amendments, which adopted the six-months requirement. Moreover, the city's arguments under this point overlook the further failure to have notice and hearing before the zoning commission as its ordinance required. Considering all of these deficiencies we agree with the master and chancellor below that the 1958 amendatory ordinance was void and of no effect.

To justify the validity of its effort to rezone plaintiffs' tract to a B2-1 classification, the city states that the 1957 comprehensive amendatory zoning ordinance introduced a new concept in the zoning of business districts, which it sees as bearing a substantial relation to the public health, safety and welfare, and insists that the rezoning is necessary to conform the property to this new concept. While we do indeed recognize and give effect to new zoning principles where constitutionally possible, (see: *Cosmopolitan Nat. Bank of Chicago* v. *City of Chicago,* 22 Ill.2d 367, 369,) the difficulty with affording much weight to the present contention lies in the fact that the comprehensive ordinance, which was passed only after a period of study and hearings in excess of one and one-half years, did not classify the property as B2-1, but permitted it to retain its B4-1 classification.

While it must be agreed that the city is possessed of the power to amend the comprehensive ordinance of 1957, the power is not an arbitrary one, but one which may be exercised only when the public good demands or requires that amendment be made. (*Phipps* v. *City of Chicago,* 339 Ill. 315, 327; *Kennedy* v. *City of Evanston,* 348 Ill. 426, 433.) Again, it is a well-established principle that one who buys land has a right to rely upon the classification which existed at the time the purchase was made, and upon the rule of law that the classification will not be changed unless the change is required for the public good. (*Wesemann* v. *Village of La Grange Park,* 407 Ill. 81, 89; *Bolger* v. *Village of Mount Prospect,* 10 Ill.2d 596, 603.) And although the city contends that the plaintiffs did not rely on the B4-1 classification, or its continuance, so as to bring these principles into operation, we find the proof to be to the contrary. The sweep of the entire record is that they would never have purchased the property without the B4-1 classification.

The evidence shows there was no change in either the

general character or the existing uses in the neighborhood in the interim between the passage of the comprehensive amendatory ordinance of 1957 and the 1958 amendment rezoning plaintiffs' land, which in any manner relates the change of zoning to the public need or demand. Instead, the only affirmative showing is that the proposal to change the zoning of the property from its B4-1 classification emanated from the desires of certain individuals that such a change be effected. We have consistently held, however, that the power to zone or rezone cannot be exercised to satisfy the individual desires of a few. (*Trust Co. of Chicago* v. *City of Chicago,* 408 Ill. 91; *Kennedy* v. *City of Evanston,* 348 Ill. 426; *Phipps* v. *City of Chicago,* 339 Ill. 315.) Considering all the facts and circumstances, they do not show such a demand for the public need or good which would serve to justify the change of the B4-1 classification of plaintiffs' property.

Moreover, we are in accord with the master who heard the evidence that the B2-1 classification is unreasonable and discriminatory as applied to plaintiffs' property, and bears no real or substantial relation to the public health, safety or welfare. Two gasoline stations on other corners of the California Avenue-Pratt Avenue intersection are B4-1 uses, as is a large commercial greenhouse nearby, and although they are nonconforming uses in a B2-1 zone the plaintiffs' land, due to its location, largely takes its character from such uses. (Cf. *Kupsik* v. *City of Chicago,* 25 Ill.2d 595.) As to traffic and parking conditions, which were given as emphasizing the need for the change in classification, uses permitted under the B2-1 classification will create as much, if not more, traffic and parking in the area.

Finally, the city's citation of *Mahoney* v. *City of Chicago,* 9 Ill.2d 156, and *City of Springfield* v. *Vancil,* 398 Ill. 575, where this court held that a city may reasonably prevent the locating of an undertaking establishment in

a residential district, is of no avail. This is not an attempt to put a funeral home in a residential zone. It is, rather, an attempt to keep such a use from a business zone.

For the reasons stated, we are of the opinion that the circuit court correctly held that the 1958 amendatory ordinance was void and of no effect, and that it properly granted the injunctive relief prayed. Accordingly, its decree is affirmed.

*Decree affirmed.*