SECOND DIVISION

May 14, 2002

No. 1-00-2181

ALBERT C. HANNA,

Plaintiff-Appellant,

v.

THE CITY OF CHICAGO, a Municipal

Corporation,

Defendant-Appellee.

)))))))))

)

)

)

)

Appeal from the

Circuit Court of

Cook County.

No. 99 CH 8311

Honorable

Lester D. Foreman,

Judge Presiding.

JUSTICE McBRIDE delivered the opinion of the court:

Plaintiff, Albert C. Hanna (Hanna), filed a four-count first amended complaint against defendant, the City of Chicago (the City), seeking a declaratory judgment, and injunctive and other relief.  The complaint involved the downzoning of Hanna's property located at 1742-50 North Mohawk Street in Chicago, which resulted from the city council's enactment of SD-19, Lincoln Central Special District (LCSD or Overlay District), an amendment to the City's zoning ordinance.  Pursuant to section 2-619.1 of the Illinois Code of Civil Procedure (Civil Code) (735 ILCS 5/2-619.1 (West 1998)), the City moved for dismissal of Hanna's complaint.  The trial court granted the City's motion and denied Hanna's motion to reconsider.  Hanna appeals those orders, contending: (1) that the trial court erred in applying the rational basis test, rather than substantial relationship test, when ruling that the LCSD was not unconstitutional; (2) that his complaint properly pleaded the LCSD was unconstitutional as violative of the due process and equal protection rights as guaranteed by the Illinois Constitution (Illinois Const. 1970, Art. I,§2); and (3) that the trial court erred in dismissing his claim alleging the LCSD does not conform to the requirements necessary for the enactment of a special district amendment.  For the reasons set forth below, we affirm in part and reverse in part the judgment of the trial court and remand this cause for further proceedings.  

BACKGROUND

Hanna's property at 1742-50 North Mohawk Street is located in the Lincoln Central neighborhood of Chicago.  In general, this area is bounded on the west by North Halsted Street, on the northeast by Lincoln Avenue, on the southeast by the former Ogden Avenue and on the south by West North Avenue.  In 1971, Hanna built a five-story brick building on his Mohawk Street property, which covered four lots and contained 26 units.  At the time, the property was zoned R-5 and the minimum lot area per dwelling unit was 400 square feet with a maximum floor area ratio of 2.2.  The property was zoned R-5 until the LCSD took effect on December 22, 1998.  According to Hanna's complaint, the LCSD was passed at the behest of various property owners in Lincoln Park, who had formed an association known as the Lincoln Central Association. 

The LCSD is composed of two subareas, subarea A and subarea B, which are divided by Larrabee Street.  Halsted Street bounds the LCSD on the west, while portions of Lincoln Avenue bounds it on the east.  The northern end of the LCSD consists of various streets between Lincoln Avenue and Halsted Street, while its southern border "jots along in a haphazard manner."  Prior to the LCSD, subarea A, in which Hanna's property is located, had been zoned R-5, which allowed multi family apartments.  Subarea B had historically been zoned R-4, which meant, in general, only buildings of up to three stories were allowed.  Hanna stated that the properties comprising subareas A and B were similar.

The preamble to the LCSD stated that it 

"intended to conserve the existing low-density residential character of the Central Lincoln neighborhood. The existing pattern of development is single-family, two-family, and three-family dwellings within two and three-story structures. The District seeks to maintain the neighborhood's existing scale and density by limiting construction of taller and bulkier multi-story buildings.  In addition, the District seeks to maintain the street-front orientation of existing homes by requiring this orientation for new construction." 

The LCSD provided that new residential construction shall not exceed 42 feet in height, where prior to the LCSD, no height limitations existed in areas zoned R-4 or R-5.  The minimum lot area was to be not less than 1,000 square feet in the Overlay District. 

Regarding the effect the LSCD had on his property, Hanna alleged that it constituted a nonconforming use, in that in the event of destruction of the property, it could no longer be used as a multi family dwelling.  Hanna claimed that because of the new height limitations, the change in the floor area ratio, which was decreased from 2.2 to 1.7, and the increase in the square foot dwelling from 400 to 1,000 square feet, he had been and would continue to be deprived of the highest and best use of his property.  

Hanna claimed that prior to passage of the LSCD, lots zoned R-5 were worth in excess of $500,000 per lot and that his property, which consisted of four lots, was valued at approximately $2,300,000.  He further claimed that lots adjacent to his, which were in subarea B, were worth about $400,000 per lot prior to the LSCD.  In his complaint, Hanna noted the increase in the minimum lot area per dwelling unit and the decrease in the maximum floor area ratio in subarea A, and the concurrent increase in the maximum floor area in subarea B.  Based upon these changes, Hanna alleged that the amount of land value transferred from R-5 unit owners in subarea A to R-4 unit owners in subarea B exceeded $300 million.
(footnote: 1)  Personally, Hanna claimed that these changes had decreased the value of his property over $500,000.

Hanna stated that pursuant to section 11-13-8 of the Illinois Municipal Code (Municipal Code) (65 ILCS 5/11-13-8 (West 1998)), he had served notice of the declaratory judgment proceeding upon all property owners within 250 feet of his property.    

In count I, Hanna alleged that when enacting the LCSD as a purported "Special District Amendment," the city council had violated section 17-20-330 of the Chicago Municipal Code (Chicago Municipal Code §17-20-330 (amended July 8, 1998)) because the city council committee on zoning had failed to give consideration to the required factors when reviewing the application for the LCSD.  Hanna also listed each factor and alleged that the LCSD did not satisfy the factors.  Included were Hanna's allegations that the boundaries of the LCSD were arbitrary and gerrymandered.  He alleged that no unique land characteristics predominated throughout the LCSD in that the Overlay District contained a hodgepodge of multi family uses, consisting of one- , two- , and three-story homes and apartments, all of which had various ages, characteristics and architecture.  He also claimed that the LCSD was surrounded by numerous commercial properties.  In count I, Hanna further claimed that the City had failed to advertise the hearings regarding the LCSD as required by section 17-44-340 of the Chicago Municipal Code (Chicago Municipal Code §17-44-340 (2000)).  He alleged further that he had invested substantial sums of money in the property and would be irreparably harmed if he were not allowed to enjoy the benefit of his property as zoned R-5.  Hanna stated that he was without an adequate remedy at law.

In count II, Hanna claimed that creation of the Overlay District constituted "invidious spot zoning."  He alleged that the ordinance in question deprived him of private property rights and privileges secured by the due process clause of article I, section 2, of the Illinois Constitution in that he had suffered a substantial reduction in the value and permissible use of his property.  He alleged that the destruction of his property value did not promote the health, safety or general welfare of the public.  Hanna's complaint stated that the LCSD had not been passed pursuant to a comprehensive zoning plan, but rather the provisions of the LCSD represented the desires of a few residents who sought to preserve and increase their own property values.  Hanna alleged that any gain to the public resulting from the enactment of the LCSD was either minimal or nonexistent.  He claimed the hardship imposed upon him was extreme, in that an uncompensated taking of his property had occurred based upon the lowering of his property value. 

In count III, Hanna claimed that enactment of the LCSD violated his due process rights and was "classic arbitrary, irrational, discriminatory" downzoning, which ignored the general welfare of the City as a whole and benefitted a vocal minority of residents in the LCSD.  He alleged that he and other property owners in the downzoned areas had been adversely impacted by, 
inter
 
alia
, the decreased housing supply, decreased population, decreased taxable income, decreased use of public transportation and reduced property values.

In count IV, Hanna claimed that the Overlay District deprived him of equal protection of the law as guaranteed by article I, section 2, of the Illinois Constitution.  Hanna alleged that he and his property were being treated differently from other similarly situated persons and property in that the LCSD discriminated against him and others in subarea A in favor of landowners in subarea B.  On information and belief, Hanna alleged that 40% of the property in subarea A was now nonconforming and, thus, he and other property owners in subarea A could not use their property for the "highest and best use."  

After each count, in his prayer for relief, Hanna sought a declaration of the court that the LCSD be declared null and void.  He also prayed that the City be enjoined from enforcing any provisions of the Overlay District. 

In its combined motion to dismiss Hanna's complaint, the City argued pursuant to section 2-615 of the Civil Code that count I of Hanna's complaint was insufficient to state a claim for which relief could be granted because the trial court lacked authority to invalidate an ordinance enacted by a home rule municipality on the ground that the municipality failed to follow procedures as required by its own ordinances.  The City further claimed that count II of Hanna's complaint must be dismissed because the allegations contained in his complaint were insufficient to state a claim for spot zoning.  Regarding counts II, III and IV, the City argued that dismissal of those counts was proper where Hanna's allegations were factually insufficient to establish that the Overlay District was not rationally related to its purpose of conserving the existing scale and low-density character of the Lincoln Central neighborhood.

The City moved for dismissal of Hanna's complaint under section 2-619 of the Civil Code on the ground that he had failed to comply with the notice requirements of section 11-13-8 of the Municipal Code.  (65 ILCS 5/11-13-8 (West 1998)).  The City claimed Hanna was required to give notice to all property owners within 250 feet of the entire Overlay District, rather than only property owners within 250 feet of his property.

Following arguments on the motion, the trial court ruled that it was without authority to rule on count I of Hanna's complaint wherein he alleged that the city council failed to follow requirements it had imposed upon itself when enacting the LCSD.  The trial court dismissed count II of Hanna's complaint because, in the trial court's opinion, the size of the Overlay District, which included 40 blocks, was too large an area to constitute spot zoning.  Finding that Hanna's due process and equal protections challenges, counts III and IV, respectively, did not involve a fundamental right or a suspect class, the trial court dismissed those counts because a reasonable relationship existed between the ordinance and a legitimate government interest.  After denial of his motion for reconsideration, Hanna now appeals.                   

ANALYSIS

Hanna first contends that the trial court erred in applying the rational basis test when ruling on the City's motion to dismiss.  Hanna urges that the proper test in determining the constitutionality of the LCSD is whether the zoning ordinance at issue bears a substantial relationship to the public health, safety and welfare or whether it is arbitrary, irrational and capricious.  See 
Village of Euclid v. Ambler Realty Co.
, 272 U.S. 365, 395, 71 L. Ed. 303, 314, 47 S. Ct. 114, 121 (1926).  In connection with the substantial relationship test, Hanna argues that the trial court should have taken into consideration the factors as set forth in  
La Salle National Bank of Chicago v. County of Cook
, 12 Ill. 2d 40, 145 N.E.2d 65 (1957), when ruling on the City's motion to dismiss.  In support of his claim, Hanna relies upon a series of cases in which this court and the Illinois Supreme Court have applied the substantial relationship test when considering a constitutional challenge to a zoning ordinance.  See, 
e.g.
, 
Cosmopolitan National Bank of Chicago v. City of Chicago
, 27 Ill. 2d 578, 190 N.E.2d 352 (1963); 
Harris Trust & Savings Bank v. Duggan
, 105 Ill. App. 3d 839, 435 N.E.2d 130 (1982), 
aff'd
, 95 Ill. 2d 516
, 449 N.E. 2d 69 (1983)
.

The City claims the rational basis test is applicable here because a suspect classification or a fundamental right is not implicated.  See 
Brown's Furniture, Inc. v. Wagner
, 171 Ill. 2d 410, 665 N.E.2d 795 (1996); 
DeWoskin v. Loew's Chicago Cinema, Inc.
, 306 Ill. App. 3d 504, 714 N.E.2d 1047 (1999) (rational basis test applied when movie theater ticket purchaser made equal protection challenge to constitutionality of county amusement tax).  Under the rational basis test:

"One who challenges an ordinance as failing this test of minimum rationality bears the burden of proving by clear and affirmative evidence that the ordinance constitutes arbitrary, capricious and unreasonable municipal action; that there is no permissible interpretation which justifies its adoption, or that it will not promote the safety and general welfare of the public.'"  
Triple A Services, Inc. v. Rice
, 131 Ill. 2d 217, 226, 545 N.E.2d 706 (1989), quoting 
City of Decatur v. Chasteen
, 19 Ill. 2d 204, 210, 166 N.E.2d 29 (1960).  

Section 2-619.1 of the Civil Code permits a party to combine a section 2-615 motion to dismiss based upon a plaintiff's substantially insufficient pleadings with a section 2-619 motion to dismiss based upon certain defects or defenses.  735 ILCS 5/2-619.1 (West 1998).
  It is proper for a court when ruling on a motion to dismiss under either section 2-615 or section 2-619 to accept all well-pleaded facts in the complaint as true and to draw all reasonable inferences from those facts in favor of the nonmoving party.  
Storm & Associates, Ltd. v. Cuculich
, 298 Ill. App. 3d 1040, 1047, 700 N.E.2d 202 (1998).  
Our review is 
de
 
novo
 for motions to dismiss brought under both sections 2-615 and 2-619. 
Stephen L. Winternitz, Inc. v. National Bank of Monmouth
, 289 Ill. App. 3d 753, 755, 683 N.E.2d 492 (1997). 

In support of his contention that the substantial relationship test is applicable in the instant case, Hanna relies upon the 
Duggan
 case.  In that case, Harris Bank, as the trustee of the Helen L. Kellogg Trust and owner of the relevant property, challenged the constitutionality of a zoning ordinance as applied to the relevant property.  The zoning amendment in question downzoned only the subject property and affected no other property.  In determining that the ordinance was unconstitutional, this court 
applied the substantial relationship test and relied upon the factors also used by the supreme court in 
La Salle
.  
Duggan
, 105 Ill. App. 3d at 849-50.  

The supreme court affirmed this court's decision in 
Duggan
.  
Harris Trust & Savings Bank v. Duggan
, 95 Ill. 2d 516, 449 N.E.2d 69 (1983).  The supreme court held that the ordinance was unconstitutional as applied to the bank's property, stating that "zoning ordinances must bear a 
substantial
 relationship to the public health, safety and welfare." (Emphasis in original.)  
Duggan
, 95 Ill. 2d at 532-33.  The substantial relationship test was applied by the supreme court despite the defendant's contention that the ordinance was valid provided there was any rational basis upon which it could be sustained.  
Duggan
, 95 Ill. 2d at 531. 

Hanna also relies upon 
Cosmopolitan National Bank of Chicago v. City of Chicago
, 27 Ill. 2d 578, 190 N.E.2d 352 (1963).  In that case, the plaintiffs were landowners who challenged the constitutionality of an entire amendatory ordinance that rezoned the plaintiffs' property so as to preclude its use as a funeral parlor.  In affirming the circuit court, the supreme court applied the substantial relationship standard and found that the zoning change was unreasonable and discriminatory as applied to the plaintiffs' property.  
Cosmopolitan National Bank
, 27 Ill. 2d at 585. 

The City distinguishes these cases on the basis that in each case, the challenge to the zoning ordinance was as applied to the plaintiffs' property and was not a facial challenge as is Hanna's attack.  The City argues that where a facial challenge to legislation restricting a landowner’s use of his property has been at issue, our supreme court has applied the rational basis test.  The City directs this court to 
Beverly Bank v. Illinois Department of Transportation
, 144 Ill. 2d 210, 579 N.E.2d 815 (1991), where the plaintiff challenged the constitutionality of a piece of flood control legislation, which prohibited all new residential construction in an area encompassing a 100-year floodway.  The plaintiff argued that the flood legislation was unconstitutional as it applied to any piece of property in the floodway.  The plaintiff further argued that the supreme court must apply the substantial relationship test by analyzing the factors as set forth in 
LaSalle
.  The defendant characterized the plaintiff's challenge as facial and the supreme court agreed.  The defendant argued that because the plaintiff's wish to build in the floodway implicated neither a fundamental right nor a suspect class, the proper level of scrutiny was the rational basis test.  In its analysis, the court stated,  " 'It is *** well established that reasonable restraints on the use of property in the interest of the common good and bearing a real and substantial relation to the public health, safety, morals and general welfare constitute a valid exercise of the police    power.' "  
Beverly Bank
, 144 Ill. 2d at 226, quoting 
Midland Electric Coal Corp. v. County of Knox
, 1 Ill. 2d 200, 208 (1953).  Quoting 
City of Aurora v. Burns
, 319 Ill. 84, 92-93, 149 N.E. 784 (1925), the court further stated:

"'The authority of the States to enact such laws as they deem reasonably necessary to promote the public health, morals, safety and general welfare comprehends a wide range of judgment and discretion in determining the matters which are of sufficiently general importance to be subjected to State regulation and administration. *** The police power, however, has constitutional limits, and any measure enacted or adopted in its exercise, to be sustained, must bear some reasonable relation to the purposes for which the power may be exercised.'" 
Beverly Bank
, 144 Ill. 2d at 226, quoting 
City of Aurora
, 319 Ill. at 92-93.

After considering the State interests served by the legislation, the court concluded the legislation was constitutional because it was "rationally related to several legitimate State interests."  
Beverly Bank
, 144 Ill. 2d at 228.  For the same reasons, it found that the flood legislation bore "a substantial relation to the public health, safety and welfare."  
Beverly Bank
, 144 Ill. 2d at 228.

We are unpersuaded by the City's argument that the cases Hanna relies upon are inapplicable to our determination because in each case, the challenge to the constitutionality of the zoning ordinance was as applied to the plaintiffs' property.  We agree that in the two 
Duggan
 cases and 
Cosmopolitan National Bank
 the plaintiffs sought invalidation of the zoning ordinances as applied to their property.  However, in all of these cases, the plaintiffs also sought invalidation of the legislation in its entirety.  In the 
Duggan
 cases, the zoning ordinance at issue applied only to the bank's property.  In 
Cosmopolitan National Bank
, the supreme court expressly characterized the plaintiffs' action as "fundamentally one to have the entire amendatory ordinance *** declared void."  
Cosmopolitan National Bank
, 27 Ill. 2d at 582.  In essence, the parties challenging the legislation in 
Duggan
 and 
Cosmopolitan National Bank
 sought invalidation of the entire ordinances at issue, just as Hanna is attempting to do here.  In both of those cases, the supreme court applied the substantial relationship test.    Our supreme court has stated that "[e]very owner has a right to use his property in his own way and for his own purposes, subject only to the restraint necessary to secure the common welfare.  This is both a liberty and a property right."  
Northern Trust Co. v. City of Chicago
, 4 Ill. 2d 432, 437, 123 N.E.2d 330 (1954), citing 
Village of La Grange v. Leitch
, 377 Ill. 99, 35 N.E.2d 346 (1941).  Furthermore, "it is a well-established principle that one who buys land has a right to rely upon the classification which existed at the time the purchase was made, and upon the rule of law that the classification will not be changed unless the change is required for the public good."  
Cosmopolitan National Bank
, 27 Ill. 2d at 584.  Given the importance placed upon the rights associated with the ownership of property, and the supreme court's previous application of the substantial relationship test in zoning cases, we hold that in a facial challenge to the constitutionality of a zoning ordinance the applicable level of scrutiny is whether the legislation bears a substantial relationship to the public health, safety and welfare or whether it is arbitrary, irrational and capricious.  

We do not find the supreme court's decision in 
Beverly Bank
 at odds with our holding here.  Initially, the legislation at issue in that case, 
though limiting the property owner's ability to construct a new residence on the affected property, was not zoning legislation.  Rather, it was flood control legislation.  That aside, in 
Beverly Bank
, while the supreme court did hold that the challenged legislation was rationally related to several legitimate State interests, it further stated that the legislation bore a substantial relationship to the public health, safety and welfare.  Thus, in finding that the legislation was constitutional, it applied the substantial relationship test.

Having ruled that the substantial relationship test is applicable, the following factors must be taken into account when deciding Hanna's facial constitutional challenge of the LCSD: (1) the existing uses and zoning of nearby property; (2) the extent to which property values are diminished by the particular zoning restrictions; (3) the extent to which the destruction of property values of the plaintiff promotes the health, safety, morals or general welfare of the public; (4) the relative gain to the public as compared to the hardship imposed upon the individual property owner; (5) the suitability of the subject property for the zoned purposes; and (6) the length of time the property has been vacant as zoned considered in the context of land development in the area in the vicinity of the subject property.  
La Salle National Bank
, 12 Ill. 2d at 46-47.  

In Counts III and IV of his complaint, Hanna alleged that the properties in the Overlay District consisted of a hodgepodge of homes and apartments having various numbers of floors and differing designs and architectures.  He also alleged that the LCSD was surrounded by numerous commercial structures.  Regarding diminished property values, Hanna alleged in his complaint that his property was worth substantially less as a result of the zoning change and that $300 million of property value had been transferred from property owners in subarea A to property owners in subarea B.  Hanna further alleged that the destruction of his property values did not promote the health, safety or general welfare of the public.  Instead, it benefitted the desires of a few residents.  Hanna also claimed the LCSD had adversely impacted the City as a whole by decreasing housing supply, population and property values.  He alleged the gain to the public was either minimal or nonexistent and that the hardship imposed upon him was extreme in that an uncompensated taking of his property had occurred due to the reduced property values.  It was further alleged by Hanna that his property and the property in the Overlay District had been zoned "as is" for over 40 years and no reason existed to change the zoning.  While mindful of the difficulties involved in pleading facts relating to the 
La Salle
 factors, we find that the facts as alleged in Hanna's complaint were sufficient to support his alleged constitutional violations. See 
Rodriguez v. Henderson
, 217 Ill. App. 3d 1024, 1029-30, 578 N.E.2d 57 (1991).    

In count II of his amended complaint, Hanna alleged a separate violation of his constitutional right to due process on the ground that the Overlay District represented "invidious spot zoning."    " 'Spot zoning' is a change in zoning applied only to a small area, which is out of harmony with comprehensive planning for the good of the community; zoning that would violate a zoning pattern that is homogenous, compact and uniform."  
Bossman v. Village of Riverton
, 291 Ill. App. 3d 769, 774, 684 N.E.2d 427 (1997).  In determining whether a rezoned area constitutes spot zoning it must be decided if a change is in harmony with a comprehensive plan for use of property in the locality.  
Goffinet v. County of Christian
, 65 Ill. 2d 40, 54, 357 N.E.2d 442 (1976). 

The City argues that the two districts comprising the LCSD cover more than 40 blocks, and therefore, the area at issue is not small.  It also argues that Hanna failed to plead any facts showing that the LCSD violates a homogenous, compact and uniform zoning pattern. 

     As for the City's argument that the size of the LCSD is too large to constitute spot zoning, the size of the rezoned area is only one factor to be considered.  See 
Fifteen Fifty North State Building Corp. v. City of Chicago
, 15 Ill. 2d 408, 419, 155 N.E.2d 97 (1958).  Hanna alleged in his complaint that the LCSD had not been passed pursuant to a comprehensive zoning plan.  Instead, Hanna alleges that the LCSD was passed to cater to the wishes of a vocal minority.  He alleged further that numerous commercial properties surround the LCSD and that the structures within the LCSD are of differing architecture, size and design.  Given these allegations, which must be taken as true for purposes of a motion to dismiss, we find that the trial court erred in dismissing Hanna's constitutional claim premised upon improper spot zoning.       
Regarding count I, which did not involve a constitutional challenge to the ordinance, Hanna contends the trial court erred in dismissing this count wherein he alleged the LCSD is void because it fails to substantively comply with the special district amendment.  Relevant factors to be considered include: (1) the classification of the property within the proposed special district; (2) whether the proposed boundaries of the special district delineate a reasonably compact and contiguous area of at least four acres; (3) whether unique land use characteristics predominate throughout the proposed district, including, 
inter
 
alia
, unique uses, floor area ratios, number of dwelling units, exterior building materials and design, layout of public ways and platting or development features; (4) whether the existing zoning of the property would allow new development in a manner inconsistent with the unique characteristics within the proposed district; and (5) whether supplemental special district regulations are needed to maintain the unique character of the area.  Chicago Municipal Code §17-20-330 (amended July 8, 1998).

The City argues and we agree that dismissal of this count was proper.  In 
Illinois Gasoline Dealers Ass'n v. City of Chicago
, 119 Ill. 2d 391, 404, 519 N.E.2d 447 (1988), the supreme court, quoting 
Chirikos v. Yellow Cab Co.
, 87 Ill. App. 3d 569, 574, 410 N.E.2d 61 (1980), stated:

" 'This court cannot handle matters which in effect are attempts to overrule decisions of a legislative body based upon alleged failure to follow requirements imposed by that body itself. *** We have authority to invalidate legislation adopted by the city council only upon grounds that the enactment violates a provision of the Federal or State constitutions or violates the mandate of a State or Federal statute.' "  

In count I of his amended complaint, Hanna alleged the LCSD was void based upon the city council failing to consider the above listed substantive factors.  What he is asking this court to do is invalidate the ordinance on the ground that the city council failed to follow its self-imposed requirements, 
i.e.
, to give proper weight to the relevant factors, when enacting the LCSD.  In count I of his complaint, Hanna has not alleged the ordinance is void on the grounds that it violates the state or federal constitution or that it violated the mandate of a state or federal statute.  Thus, it is improper for a court to declare the LCSD void because of the city council's failure to properly consider the relevant factors.  See 
Landmarks Preservation Council of Illinois v. City of Chicago
, 125 Ill. 2d 164, 179-80, 531 N.E.2d 9 (1988).   

The City further argues that dismissal of Hanna's complaint is proper because he failed to give the requisite notice as required by the Municipal Code.

Section 11-13-8 of the Municipal Code (65 ILCS 5/11-13-8 (West 1998)) provides:

"In municipalities of 500,000 or more population, when any zoning ordinance, rule or regulation is sought to be declared invalid by means of a declaratory judgment proceeding, not more than 30 days before filing suit for a declaratory judgment the person filing such suit shall serve written notice in the form and manner and to all property owners as is required of applicants for variation in Section 11-13-7 ***." 

Section 11-13-7 (65 ILCS 5/11-13-7 (West 1998)) of the Municipal Code states in relevant part:

"[I]n municipalities of 500,000 or more population, an applicant for variation or special use shall, not more than 30 days before filing an application for variation or special use with the board of appeals, serve written notice, either in person or by registered mail, return receipt requested, on the owners *** of all property within 250 feet in each direction of the location for which the variation or special use is requested ***." 

In reliance upon these provisions of the Municipal Code, the City argues that because Hanna is seeking declaratory relief, he is required to give notice to not only the property owners within 250 feet of his Mohawk property, but to all property owners within 250 feet of the Overlay District.  Hanna argues that to require him to give the type of notice advanced by the City would operate a burden upon him that could not have been intended by the legislature.  

When construing a statute, a court must look primarily to the words of the statute as evidence of the legislature's intent.  
Stone v. Department of Employment Security Board of Review
, 151 Ill. 2d 257, 261, 602 N.E.2d 808 (1992).  "[A] court must construe a statute as it is written and may not, under the guise of construction, supply omissions, remedy defects, annex new provisions, substitute different provisions, add exceptions, limitations, or conditions, or otherwise change the law so as to depart from the plain meaning of language employed in the statute."  
Shaw Industries, Inc. v. Community College District No. 515
, 318 Ill. App. 3d 661, 665-66, 741 N.E.2d 642 (2000).  Courts are to construe statutes so as to give effect to each section and it is presumed the legislature did not intend absurd, unjust or unreasonable consequences.  
Lemont-Bromberek Combined School District No. 113(a) v. Walter
, 279 Ill. App. 3d 847, 850, 665 N.E. 2d 548 (1996).  

The Municipal Code is clear in its pronouncement that when a party seeks to have a zoning ordinance invalidated by means of a declaratory judgment, the party seeking such relief shall serve written notice to owners of all property "within 250 feet in each direction of the location" which are affected by the alleged invalid ordinance.  We do not find it an absurd, unjust or unreasonable consequence that landowners, whose property rights could be affected by a declaratory judgment, are given notice of such proceedings.  Moreover, to the extent that such notice may be deemed burdensome, the 250-foot notice requirement only applies to declaratory relief.  If other relief, such as when only injunctive relief is prayed for, the notice requirement at issue here is inapplicable.  Thus, on remand, in the event Hanna wishes to pursue declaratory relief, he should be afforded the opportunity to give appropriate notice to all property owners within 250 feet of the Overlay District.       
 

The City also argues that dismissal of Hanna's entire complaint is appropriate because he challenges the LCSD as applied to his property and has failed to exhaust his local remedies.  To the extent that Hanna challenges the LCSD as applied to his property, he is required to exhaust his local remedies.  See 
Brodner v. City of Elgin
, 96 Ill. App. 3d 224, 227, 420 N.E.2d 1176 (1981).  However, the City concedes in its brief on appeal Hanna "seeks to invalidate the entire special district."  Thus, because Hanna seeks to invalidate the LCSD in its entirety, he is not required to exhaust his local remedies.  See
 
Cosmopolitan National Bank
, 27 Ill. 2d at 582. 

The City further argues that the trial court properly dismissed Hanna's complaint because he has failed to allege the threat of immediate and irreparable injury, which is necessary in a prayer for injunctive relief.  See 
Chicago Title & Trust Co. v. Weiss
, 238 Ill. App. 3d 921, 928, 605 N.E.2d 1092 (1992).

In his complaint, Hanna alleged that his land value had decreased by over $500,000 because of the LCSD.  He also alleged that the amount of land value transferred from R-5 unit holders to R-4 unit holders exceeded $300 million.  He claims these allegations are properly pleaded facts, sufficient to establish an immediate and irreparable injury.  In support, he relies upon 
Western Theological Seminary v. City of Evanston
, 325 Ill. 511, 156 N.E. 778 (1927), where a seminary filed an amended bill for an injunction against the City of Evanston, praying that a zoning ordinance be decreed invalid and that the city be retrained from either enforcing, or threatening to enforce, the provisions of the ordinance.  The city argued that equity would not enjoin enforcement of the allegedly invalid ordinance on the ground of its invalidity unless the party seeking relief had done some act to bring himself within the operation of the ordinance or where the party had an adequate remedy at law.  
Western Theological Seminary
, 325 Ill. at 525.  Our supreme court agreed with the general proposition that equity would not enjoin the enforcement of a void ordinance on the ground of apprehension with respect to what could be done under the ordinance.  However, the court further stated:

"The amendatory ordinance, according to the allegations of the bill, was an arbitrary and unreasonable exercise of power in respect to the property of the [seminary].  It is void as to such property, but its existence is a cloud upon the [seminary's] title, is immediately destructive of its value, and therefore constitutes a present invasion of the [seminary's] rights and a threat to continue such invasion."  
Western Theological Seminary
, 325 Ill. at 528.

In reaching its decision, the supreme court cited with approval the Supreme Court's opinion in 
Euclid
 where a similar argument was made.  There, the Supreme Court stated:

"The effect of the allegations of the bill is that the ordinance of its own force operates greatly to reduce the value of appellee's lands and destroy their marketability for industrial, commercial and residential uses; and the attack is directed, not against any specific provision or provisions, but against the ordinance as an entirety.  Assuming the premises, the existence and maintenance of the ordinance, in effect, constitutes a present invasion of appellee's property rights and a threat to continue it.  Under these circumstances, the equitable jurisdiction is clear."  
Euclid
, 272 U.S. at 386, 71 L. Ed. at 310, 47 S. Ct. at 117-18. 

Here too, Hanna challenges the ordinance at issue in its entirety.  He has properly alleged that the mere existence of the LCSD, which limits the use of his property, has greatly reduced the value of his property and has served to shift $300 million in property values from one subarea to another.  This reduction in property values as pleaded, if proved, is sufficient to establish an immediate and irreparable injury.    

     Accordingly, the judgment of the circuit court is affirmed in part, reversed in part and this cause is remanded.

Affirmed in part and reversed in part; cause remanded. 

GORDON and SOUTH, JJ., concur.

FOOTNOTES
1:
In his original brief on appeal, Hanna states that although he alleged $300 million in his complaint, it should be $30 million.  Because there is no indication that a correction to the complaint regarding this number was made at the trial court level, we will use the $300 million figure.